[Civ. No. 19950. Second Dist., Div. Three. Oct. 6, 1954.]

THE PEOPLE, Respondent, v. ROLAND E. LOOP et al., Defendants; PHILIP L. WILSON et al., Appellants.

Stanley M. Arndt for Appellants.

George C. Hadley, R. B. Pegram, John N. McLaurin and Albert J. Day for Respondent.

VALLÉE, J.—The state brought this proceeding in eminent domain to acquire for freeway purposes the fee title to a triangular parcel of realty, referred to in the record as "parcel 5 (Amended)," owned by defendants Philip L. and Maud N. Wilson. We shall refer to the property sought to be condemned as "parcel 5."

Defendants are the owners of a rectangular, inside, unimproved parcel of realty near downtown Los Angeles, consisting of Lot 52 on the east and Lot 53 on the west, located on the north side of Wilshire Boulevard, one of the most highly developed and principal thoroughfares leading into the business section of the city. Lots 52 and 53 are contiguous. Together they have a frontage of 122.66 feet on Wilshire Boulevard, a depth of 134.99 feet, and abut in the rear on a 20-foot wide dead-end alley which opens into St. Paul Avenue. They are surrounded by highly developed and improved properties. The parties and all witnesses treated Lots 52 and 53 as one unit.

In this proceeding the state seeks to acquire a triangle on the southeasterly corner of the property, 46.63 feet on Wilshire Boulevard, 96.75 feet along the easterly line of Lot 52 and 107.62 feet along the hypotenuse. The acquisition of the triangle will reduce defendants' Wilshire Boulevard frontage 38 per cent (from 122.66 to 76.03 feet), and will reduce the area of Lots 52 and 53 by 13.65 per cent. The triangle is being acquired in connection with the construction

of the Harbor Freeway. Wilshire Drive was formerly located about 130 feet east of defendants' property. It is being moved westerly so that it will abut on the east line of defendants' remaining property. It will have a pavement width of 32 feet, will carry one-way traffic from the freeway, parking will not be permitted, and motor vehicle entrance to defendants' remaining property will not be permitted. Defendants will have only pedestrian access to their remaining property along Wilshire Drive. In effect, Wilshire Drive will be a ramp to carry southbound traffic from the Harbor Freeway to Wilshire Boulevard. The following diagram will assist in understanding the property involved:

A jury found that the value of parcel 5 was $15,187, the damages to defendants' remaining property was $7,500, and the benefits to the part remaining was $45,000. De-

fendants appeal from the interlocutory and final judgments which followed.

Defendant's assignments of error are: (1) Error in granting plaintiff's motion to strike substantially all of the testimony of defendants' experts. 2. Errors in rulings on the admission of evidence. 3. Errors in giving and refusing to give instructions.

In a proceeding in eminent domain the owner of the property must be paid not only the value of the property sought to be condemned but also ''2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.'' (Code Civ. Proc., § 1248, subd. 2.) The trier of fact must ascertain and assess ''3. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiffs; and if the benefit shall be equal to the damages assessed under subdivision 2, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value'' (Code Civ. Proc., § 1248, subd. 3), and ''7. As far as practicable, compensation must be assessed for each source of damages separately.'' (Code Civ. Proc., § 1248, subd. 7.)

Defendants called two experts as witnesses, Charles G. Frisbie and Thurston H. Ross. Mr. Frisbie appears from the record to be an expert of long and extensive experience in the valuation of real property. His experience, qualifications, and investigation were not questioned at the trial nor are they here. On direct examination Mr. Frisbie testified that the highest and best use of Lots 52 and 53 was for a four-story garage with ramps to the alley in the rear for ingress and egress; the market value of parcel 5 was $32,000; there were severance damages in the amount of $12,900; and there were no special benefits. He stated the reasons for his opinions at length. Mr. Frisbie was then cross-examined. On cross-examination, in response to a question by the attorney for the state, he testified that the market value of Lots 52 and 53

was $156,000 and that the value of the part remaining after the taking was $111,100.[1] He testified repeatedly that the part taken was worth more a square foot than the average square foot value of the whole, and the part remaining was worth less a square foot than the average square foot value of Lots 52 and 53 as a whole. The cross-examination covered 207 pages of the reporter's transcript. At its conclusion the attorney for the state moved to strike substantially all of Mr. Frisbie's testimony together with a number of exhibits which were introduced in evidence in connection with his cross-examination. The motion, as first made, was to strike all of Mr. Frisbie's testimony "with respect to his evaluation of the part taken and his damages to the remainder." The motion, as first made, was followed by much comment and argument by the attorney for the state, in the midst of which he said, "I want to limit this only to those portions of the testimony to which the argument that I have addressed applies and none other. In other words, as far as I am concerned, the witness's testimony up to and including his testimony of the fair market value of the property and his testimony as to his reasons for the damages or at least as to his reasons as to the severance damage of $12,900 which I would characterize as severance damage, we have no objection to that standing in the record, but as to his process of evaluation which I really feel is tied into that, those should go out, and they are not proper in this case." After this statement he continued with more comment and argument. Counsel for defendants then sought to have the motion clarified, made definite and certain, and argued in opposition; at the conclusion of which the attorney for the state said, "I move to strike all of the testimony of the witness with exception of his testimony preceding his expression of the fair market value of the property in the sum of $156,000," and he continued the argument.

At the conclusion of this argument the court in part stated, "If the Court grants the motion, I don't know how in the world we are going to get the matter over to the jury." In response to a question by the court the attorney for the state

---

[1]Mr. Frisbie's figures were:

| | |
|---|---:|
| Value of part taken | $ 32,000 |
| Severance damages | 12,900 |
| Value of part remaining after taking | 111,100 |
| Special benefits | None |
| Total | $156,000 |

said he would not address his motion to Mr. Frisbie's figure of $12,900 severance damages. Counsel for defendants then informed the court that Mr. Frisbie did not, on direct examination, testify to the figure $156,000 as the value of Lots 52 and 53 before the taking, but has done so in response to a question by the attorney for the state on cross-examination (which was the fact), and asked if the motion included the exhibits which had been introduced in evidence on cross-examination of Mr. Frisbie. After further discussion the attorney for the state said, "I specifically move to strike anything in the record, without regard to whether it came first, second, or any other place, the $32,000, anything except the $156,000 valuation of the property before and the testimony on $12,900 on the severances, in other words, his qualification in that regard. . . . I will say all pictures, all photographs that were introduced on cross-examination may go out. . . . [A]bout the only thing then that is competent that he testified to here is what his investigation was, his qualifications, and all the rest of that preliminary and foundational questions, and then if they can salvage something out of either direct or cross-examination which expressed his opinion on value, market value of the property before in the condition it was in, $156,000, I think the reasons he gave on cross, $12,900 on that particular element of severance damage is improper, I think all the rest, the pictures I introduced, because they are all part of it, I expect that they should go out and be eliminated." The motion, such as it was, was then granted and the court made the following statement to the jury: "Ladies and gentlemen of the jury, upon the motion of the State of California, plaintiff herein, through its attorneys, the Court has stricken from the record the following portions of the testimony of the defendant's witness Charles Frisbie: (1) His opinion of the fair market value of Parcel 5 amended in the sum of $32,000, and his reasons in support thereof; (2) His opinion of the fair market value of the defendants' remaining property comprising 14,298 square feet and as part of the entire property in its before condition in the sum of $124,000, and his reasons in support thereof; (3) His opinion of the fair market value of defendants' remaining property comprising 14,298 square feet and as a part of the entire property in its after condition in the sum of $111,100, and his reasons in support thereof." The court also struck out 12 exhibits which had been introduced in evidence by the state on cross-examination of Mr. Frisbie.

Counsel for defendants then requested clarification of the

record, as stated in the margin,[2] "so we will know just what portion of the cross-examination is in, and what portion isn't in," to which the court replied, "The ruling is probably as clear as the Court could make it, and the reasons certainly were given in cross-examination."

The other expert called by defendants was Thurston H. Ross, a former professor of engineering at the University of Southern California. The experience, qualifications, and investigation of Professor Ross were not questioned at the trial nor are they here. On direct examination Professor Ross testified that the highest and best use of Lots 52 and 53 was for a multiple story class A garage building for day-and-night storage; the market value of Lots 52 and 53 was $150,000; the market value of parcel 5 as a part of the whole was $34,500; there were severance damages in the amount of $12,500; the value of the part, remaining after the taking was $103,000; and there were no special benefits.[3] Professor Ross gave the reasons for his opinions. He was then cross-examined. He testified repeatedly that the part taken was worth more a square foot than the average square foot value of the whole, and the part remaining was worth less a square foot than the average square foot value of Lots 52 and 53 as a whole. The cross-examination covered 93 pages of the reporter's transcript. At its conclusion the attorney for the state said he had a motion to make. Counsel for defendants then asked the court for leave to take the witness on redirect examination before the motion was made if it was to be similar to that made with respect to the testimony of Mr. Frisbie. The request was denied. The attorney for the state then made a

---

[2] "MR. ARNDT [attorney for defendants]: Now, if the Court please, as to item 1 the witness was specifically asked the question as to the market value of 5 and as to his reasons, but as to items 2 and 3 those were not asked on direct examination. Those two matters were brought out on cross-examination, and no question was asked as to his reasons specifically. So I do not know what is meant by the portion of the testimony which is included under his reasons in support thereof, because they all came out under cross-examination, if your Honor please, and we have had many hours of cross-examination, and I therefore would ask that that be clarified so we will know just what portion of the cross-examination is in, and what portion isn't in. I did not ask the question, and I do not remember anyone asking the question 'What are your reasons for items 2 and 3?'"

[3] Professor Ross' figures were:

| | |
|---|---|
| Value of part taken | $ 34,500 |
| Severance damages | 12,500 |
| Value of part remaining after taking | 103,000 |
| Special benefits | None |
| Total | $150,000 |

motion to strike the following parts of the testimony of Professor Ross: "(1) His opinion of the fair market value of Parcel No. 5 amended, in the sum of $34,500, and his reasons in support thereof; (2) His opinion of the fair market value of the defendants' remaining property comprising 14,298 square feet as a part of the entire property in its before condition in the sum of $115,500, and his reasons in support thereof; (3) His opinion of the fair market value of the defendants' remaining property comprising 14,298 square feet as a part of the entire property in its after condition, in the sum of $103,000, and his reasons in support thereof." The motion was granted and the jury was instructed to disregard the testimony.

So far as we are able to decipher the grounds of the motions to strike from the confused and confusing record they were that it appeared from the cross-examinations of Mr. Frisbie and Professor Ross that they failed in their valuation of parcel 5 to apply thereto the same average factor per square foot value which they ascribed to Lots 52 and 53 as an entity, that "[w]e do move to strike all of the testimony with respect to his [Mr. Frisbie] evaluation of the part taken and his damages to the remainder . . . had he [Mr. Frisbie] come in on an average value of the whole, which is the standard in these proceedings . . . his figure would have been $21,334.40 and not $32,000. . . . in the condition the property was in before as part of the part taken, it would have had to have by simple mathematics the same average value that it had in the beginning as part of the whole, $156,000, . . . that the method of calculation is not susceptible of common reasonable understanding and adaptation in these proceedings, . . . [i]t is further confusing this jury to allow that type of testimony to stand, and I submit my motion upon that statement"; that because they valued the part taken at more a square foot than the average square foot value of the whole, they included severance damages in the value of the part taken.[4]

---

[4]Lots 52 and 53, before the taking, contain 16,558 square feet. Mr. Frisbie valued lots 52 and 53, before the taking, at $156,000. Mathematically, the average square foot value of lots 52 and 53 was $9.42 a square foot ($156,000 divided by 16,558). Parcel 5 contains 2,260 square feet. Mr. Frisbie valued parcel 5 at $32,000. Mathematically, the average square foot value of parcel 5 on Mr. Frisbie's valuation was $14.16 ($32,000 divided by 2,260). After the taking, lots 52 and 53 will contains 14,298 square feet. If $32,000, the value of parcel 5 as testified to by Mr. Frisbie, is deducted from $156,000, his value of the remainder of lots 52 and 53, is $124,000. Mathematically, the average square foot value of the remainder of lots 52 and 53, after the taking,

■ The square foot method of valuation is based on the assumption that each and every square foot of a parcel of property has the same value as each and every other square foot. It is not a mandatory method of valuation. The square foot method is a proper method of valuation only when it can be said that each and every square foot of a parcel has the same value as each and every other square foot.

Nichols, a leading authority on the law of eminent domain, says: "In assessing the value of the land taken as part of the entire tract it is not proper merely to compute the percentage value on the basis of an artificial average unit value for the entire tract unless the actualities of the case accord with such coverage value. It may be that the part taken is the most valuable part of the tract considered from a qualitative point of view. To attribute an average unit value thereto which is based in part on the lower value of the balance of the tract is inequitable to the owner in a double aspect of the situation. It attributes a value to the part taken which is lower than its actual value and it attributes a higher ultimate value to the remainder area than its actual value, thereby reducing his recovery as to both factors below his actual damages." (4 Nichols on Eminent Domain, 3d ed., 330, § 14.231.) In *Union Ry. Co.* v. *Raine*, 114 Tenn. 569 [86 S.W. 857], the court said (86 S.W. 860): "[W]hen a small strip or portion of the land is involved, it ought to be valued at such a price, for the quantity taken, as the jury deemed it would be worth at that place and in that form, whether that be more or less than the price proven per acre for the whole tract." In *Green* v. *Board of Comrs.*, 163 La. 117 [111 So. 619], the condemnee owned 3.60 acres of land. The condemnor took 1.53 acres. The court said (111 So. 620): "[T]he assessed value of the land for the preceding year is conclusive on the plaintiff as to the actual value thereof. *Boyce Cotton Seed Oil Mfg. Co.* v. *Board of Comrs.*, 160 La. 727 [107 So. 506]. And since 1.53 is exactly $42\frac{1}{2}$ per cent of 3.60, it follows that, if it involves a mere matter of arithmetic, the value of the 1.53 acres would be $459, which was the amount allowed plaintiffs by the district judge. But in our opinion it is not a mere matter of arithmetic. It is quite true that the total value of the whole land must be taken to be its assessed value; but it does not follow that each

according to his figures, is $8.67. Apparently, because Mr. Frisbie and Professor Ross did not apply the mathematical average square foot value of lots 52 and 53 before the taking to the part taken, substantially all of their testimony was stricken.

acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract. On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values.''

In *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 P. 772], lands were condemned for reservoir purposes. The condemnor claimed that double damages had been assessed against it. The jury had been permitted, in assessing the value of the lands taken, to consider the value of such lands arising from their availability for use in conjunction with the lands not taken; and in assessing the severance damage to the lands not taken, to consider the value of such lands arising from their availability for use in conjunction with the lands taken. The court affirmed the award, saying (p. 54): ''Appellant claims that double damages were assessed against it for the reason that the jury was permitted when assessing the value of the lands taken to consider the value of such lands arising from their availability for use in conjunction with the lands not taken, and, on the other hand, when assessing the damage caused by severance to the lands not taken it was permitted to consider the value of such lands arising from their availability for use in conjunction with the lands taken. Appellant's argument in this behalf is based upon the obvious fallacy that the value of the lands taken resulting from the possibility of their use with the lands not taken is identical with the value of the lands not taken resulting from the possibility of their use with the lands taken. These respective values are, however, wholly separate and independent, and appellant was not subjected to double damages by reason of the fact that the jury was allowed to consider each of these values as separate and distinct from the other. Appellant's complaint on this score is unique and original. So far as we are aware a similar contention has never before been urged in a court of last resort.''

The reasoning of the state is delusive and deceptive. It is predicated on a misconception of the meaning of the statement that the part taken should be valued ''as a part of the whole.'' The reasoning is that this phrase means that parcel

must be valued according to its proportional value of the whole—that is: the value of Lots 52 and 53 must first be ascertained, the value of each square foot of Lots 52 and 53 must then be computed, and the number of square feet in the part taken must then be multiplied by such square foot value to determine the value of the part taken. Such reasoning is fallacious. The phrase "as a part of the whole" does not mean, as the state appears to contend, "an average part of the whole." It means, as said in *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 P. 772], that in assessing the value of the part taken the trier of fact is to consider the value of such part arising from its availability for use in conjunction with the part not taken. As Nichols expresses it: "If, as a matter of fact, the parcel taken is part of a larger tract in the same ownership it must be so considered and any increased value which inheres in it as part of a larger tract must be reflected in the award. . . . Part of the value of the parcel taken may in such case include an element of value arising out of the relationship of the part taken to the entire tract." (4 Nichols on Eminent Domain, 3d ed., 299, § 14.1[3].) Orgel, in his work "Valuation under Eminent Domain," says (p. 249, § 52) that the phrase does not mean "that the courts will sanction a prorating of the value of the whole on the basis of mere acreage when the part taken is of distinctly different quality from the part not taken." In *Chicago, R. I. & P. Ry. Co.* v. *George,* 145 Mo. 38 [47 S.W. 11], the plaintiff criticized, as allowing double damages, an instruction telling the jury to award " 'the value of the land actually taken for a right of way,' and such 'further sum, if any, as the jury may find from the evidence to be the damages to the whole tract or farm of which the right of way forms a part.' " The court said (47 S.W. 14): "While this instruction is subject to verbal criticism, it is not, we think, erroneous. It does not, as we understand it, authorize the jury to allow double damages. Defendant was entitled to the value of the land actually taken for right of way, and also the diminution in value caused thereby, if any, to the residue of the land from which the right of way was taken; and this is all the instruction permits." Stripped of irrelevant and beclouding elements, the theory advanced by the state means that the part taken in the present case must be paid for on the average square foot value of the entire property regardless of whether it is more or less valuable than the part not taken.

■ An award of the value of the land taken, plus the diminution in value of the remainder caused by the taking and caused by the construction of the improvement in the manner proposed by the plaintiff, does not necessarily result in the inclusion of severance damages in the value of the part taken or in an allowance of double damages. Section 1248 of the Code of Civil Procedure expressly provides that method of assessing damages. (See *Chicago, R. I. & P. Ry. Co.* v. *George,* 145 Mo. 38 [47 S.W. 11].) ■ The market value of the property sought to be condemned is the measure of damages. (10 Cal.Jur. 338, § 54.) ■ Severance damages are determined by ascertaining the market value of the property not taken as it was on the date fixed for determining such damages, and by deducting therefrom the market value of such remaining property after the severance of the part taken and the construction of the improvement in the manner proposed by the plaintiff. (*People* v. *Thompson,* 43 Cal.2d 13, 24, 26 [271 P.2d 507].) ■ Severance damages may be shown by proving the market value of the remainder before and after the taking and leaving the computation of the difference to the jury, or by competent evidence of severance damages in a lump sum. (*People* v. *Ricciardi,* 23 Cal. 2d 390 [144 P.2d 799].) It cannot be said, as a matter of law, that either Mr. Frisbie or Professor Ross included severance damages in the value of the part taken. The part taken may be of distinctly different quality from the part not taken. The fair market value of the part taken may be much more than that of a similar area of the part not taken.

Plaintiff's argument might be well taken if each and every square foot of Lots 52 and 53 has the same value as each and every other square foot. As we have said, Mr. Frisbie and Professor Ross testified that each and every square foot of Lots 52 and 53 does not have the same value and that parcel 5 has a higher value than the remainder. Among the reasons they gave for their opinions as to the value of the remaining property were a reduction in its size, the loss of 38 per cent of the Wilshire Boulevard frontage, the severance of the remaining land into a five-sided irregular parcel, and the impairment of use of the property as a functioning unit —all of which were proper matters of evidence in support of their opinions. (*People* v. *Ricciardi,* 23 Cal.2d 390, 398 [144 P.2d 799].) ■ Whether the opinion of a witness that each and every square foot of a parcel of property does

not have the same value as each and every other square foot is sound, does not present a question of law. Whether the opinions of Mr. Frisbie and Professor Ross were sound presented a question of fact for the jury. (*Cf. People* v. *McReynolds,* 31 Cal.App.2d 219, 227 [87 P.2d 734].) The weight to be given to the opinion of a witness is a question of fact for the jury. The jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847); the rule applies to expert witnesses. (*Estate of Blake,* 136 Cal. 306, 309 [68 P. 827, 89 Am.St.Rep. 135]; *Hirshfeld* v. *Dana,* 193 Cal. 142, 165 [223 P. 451].) They are the judges of the effect or value of opinion evidence. (Code Civ. Proc., § 2061; *Ortzman* v. *Van Der Waal,* 114 Cal.App.2d 167, 170 [249 P.2d 846, 252 P.2d 7]; *Petroleum Midway Co.* v. *Zahn,* 62 Cal.App.2d 645, 650 [145 P.2d 371].) This is not a case in which the opinion of a witness was based partially on noncompensable items of damage which he was unable to segregate from the lawful elements of damage. The credibility, weight, and effect of the testimonies of Mr. Frisbie and Professor Ross were for the jury. In support of the motions the state argued that there were inconsistencies and contradictions in the testimony of the witnesses. The rule as to conflict of evidence applies to cases of inconsistencies and contradictions in the testimony of a witness. The conflict is all the more for the jury for being intestine. (*Weintraub* v. *Soronow,* 115 Cal.App. 145, 149, 150 [1 P.2d 28]; *Farmers Bank of Camarillo* v. *Goodrich,* 90 Cal.App. 717, 721 [266 P. 550]; *Dowd* v. *Joyce,* 85 Cal.App. 377, 380 [259 P. 368]. See also *People* v. *O'Connor,* 31 Cal.App.2d 157, 159 [87 P.2d 702]; *People* v. *Willis,* 30 Cal.App.2d 419, 423 [86 P.2d 670].)

There is an additional reason why the motions should have been denied. A motion to strike must be precise, definite, and certain. It must be directed with precision to the matter sought to be stricken. (*Rose* v. *State,* 19 Cal.2d 713, 742 [123 P.2d 505].) Where testimony is admitted, some of which is relevant and competent and it is intermingled with that which is improper, a motion to strike should be directed to the portion attacked so that no uncertainty may remain as to the testimony challenged. (*Bates* v. *Newman,* 121 Cal.App.2d 800, 804 [264 P.2d 197].) The burden is on the party making the motion to make the proper motion. (*Bates* v. *Newman, supra,* 804.) On direct examination Mr. Frisbie and Professor Ross stated their reasons

for their opinions as to the various items separately, one from the other. As stated by the court, they also gave reasons for their opinions on cross-examination. On cross-examination they gave reasons in response to all sorts of questions; the reasons were not stated separately as to the various items. Reasons for their opinions with respect to one item were intermingled and interwoven with reasons for their opinions with respect to one or more other items. Their reasons in support of their opinions as to the value of the entire property and as to the amount of severance damages remained in. Their reasons in support of their opinions as to the value of parcel 5 were stricken. Their reasons in support of their opinions as to the value of the remaining property as a part of the entire property both before and after the taking were stricken. We have canvassed the testimony of Mr. Frisbie and Professor Ross and are unable to determine what part of their testimony was stricken and what part remained in. We hold it was error to grant the motions to strike.

 Three experts testified on behalf of plaintiff. Each testified that in his opinion the highest and best use of Lots 52 and 53 was for an office building. After such testimony, and at the close of plaintiff's case on values, defendants called defendant Philip L. Wilson. He has bought and sold real estate in Los Angeles for many years, including property in the vicinity of the property in question. Defendants sought to show by Mr. Wilson that he had plans drawn for an office building and for a garage building to be erected on Lots 52 and 53; that he had made a study of the cost of erecting the two types of buildings on the property; that he had previous experience in operating office buildings and garages; that an office building of the type testified to by the state's experts would net less than 6 per cent, that a garage building would net in excess of 11 per cent on the same valuation; and that the type of building testified to by the state's experts would be economically unfeasible and unprofitable. The state objected to the inquiry on the grounds it was not rebuttal and was "purely collateral." The objection was sustained. The ruling was erroneous. Manifestly the inquiry was proper rebuttal and it was not collateral. The burden of proof as to value and severance damages, and consequently as to the highest and best use of Lots 52 and 53, was on defendants. The state's case with respect thereto was a matter of defense. Evidence of defendants with respect to matters brought out in defense for the first time was rebuttal. It

was evidence offered for the purpose of destroying the effect of evidence introduced by plaintiff. The first mention that the highest and best use of the property was for an office building came with the testimony of the state's experts in the presentation of its defense on the question of values. It was entirely proper for defendants to rebut this testimony by showing, if they could, that an office building on the property would be economically unwise. (*Cf. People v. Ocean Shore Railroad, Inc.*, 32 Cal.2d 406, 426 [196 P.2d 570, 6 A.L.R.2d 1179].) ▮ Mr. Wilson was competent to testify on the subject. (*People v. Al. G. Smith Co., Ltd.*, 86 Cal. App.2d 308, 312 [194 P.2d 750].) No objection was made on that ground.

The state's experts, in valuing parcel 5, placed a value on Lots 52 and 53, divided that value by the total number of square feet in Lots 52 and 53, thus obtaining an average square foot value of each square foot in Lots 52 and 53; they then multiplied the number of square feet in parcel 5 by their average square foot value of Lots 52 and 53 and testified that was the value of parcel 5. ▮ At the conclusion of the testimony of the first expert to testify for the state, defendants moved to strike his testimony on the ground he had used the average square foot method as his basis in valuing parcel 5, and on the ground his testimony was worthless. The motion was denied. Defendants claim error. The motion did not present a question of law. The credibility, weight, and effect of the testimony of the expert were for the jury.

▮ The court declined to give the following instruction requested by defendants: "Reference has been made during the trial to the average square foot value of the property. The average square foot value of any property is an arithmetical figure secured by dividing the value of any given property by the number of square feet it contains. There is no provision of law that requires you to value Parcel 5 as amended by multiplying its square foot content by the average square foot value of Lots 52 and 53. Nor does the law require you to accept a valuation of Parcel 5 as amended based on such a method of valuation." The refusal was error. The instruction correctly states the law and should have been given.

Defendants have a rectangular parcel of property with a frontage of 122.66 feet on Wilshire Boulevard. After the taking of Parcel 5 they will have a five-sided irregular parcel

with a frontage of only 76.03 feet on Wilshire Boulevard. Instead of 122.66 feet of access to and from Wilshire Boulevard they will have 76.03 feet, a difference of 46.63 feet. ██ Defendants possess the right of direct access to Wilshire Boulevard and an easement of reasonable view of their property from that boulevard. (*People* v. *Ricciardi*, 23 Cal.2d 390, 399 [144 P.2d 799].) Any substantial impairment of such rights is compensable. (*Idem.*) ██ Defendants requested the court to give instructions to the effect that their right of access to and from Wilshire Boulevard and their easement of reasonable view would be substantially impaired by the taking of parcel 5, and that deprivation of such rights was an element of severance damages.[5] The court refused to give the instructions. Their refusal was error. In *People* v.

[5] "'Before these proceedings were commenced, plaintiff owned two lots facing on Wilshire Boulevard. The owners of property facing on a street or highway such as Wilshire Boulevard have the right of access to and from the street and the right to receive light and air from that street. This right of access is a right to come onto and leave that property via the street and the sidewalks and is often referred to as a right of ingress and egress. 'Ingress' means coming into or entering a piece of property. 'Egress' means leaving or departing from a piece of property. This right of ingress and egress includes the right to have vehicles come from the street into the property and from the property to the street and the right to have pedestrians who are passing the property enter and leave the same. These rights are property rights and belong to the property owners and if they are destroyed or impaired for the benefit of the public, that is a damage for which the property owner is entitled to be reimbursed. It is part of what is legally called 'severance damages.'"

"I instruct you that under the facts presented, defendants' right of access to and from the remaining portion of their property to and from Wilshire Boulevard has been substantially impaired. It is for you, however, to determine the extent of that impairment in money."

"When the right of ingress and egress is taken or is destroyed or impaired, the damage resulting is called a 'severance damage.' It is not the only element that is called a 'severance damage' but is included under the heading of 'severance damage.'"

"This right of ingress and egress that I have described extends to a use of the street or highway by such means of conveyance and travel as are appropriate to that particular street and in such a manner as is reasonable and customary."

"You are further instructed that defendants, as the owners of property facing on Wilshire Boulevard, have an easement or right of having their property viewed from Wilshire Boulevard by travelers along Wilshire Boulevard, including pedestrians and occupants of vehicles, public and private. Such right is called an 'easement of reasonable view' and is a separate and distinct right from the right of ingress and egress that I have described to you."

"I instruct you that such right of reasonable view will be substantially impaired by the proposed improvement in cutting off a portion of the Wilshire Boulevard frontage. It is for you to determine the extent of that impairment in money."

*Ricciardi, supra,* it is said (p. 402) : "It was therefore within the province of the trial court and not the jury to pass upon the question whether under the facts presented, the defendants' right of access will be substantially impaired. If it will be so impaired the extent of the impairment is for the jury to determine. This is but another way of saying that the trial court and not the jury must decide whether in the particular case there will be an actionable interference with the defendants' right of access." The evidence is without conflict that defendants' right of ingress and egress to and from Wilshire Boulevard and their easement of reasonable view will be substantially impaired by the taking of parcel 5. The jury should have been told it should consider the deprivation of the right of access and the easement of reasonable view in assessing severance damages. (*People* v. *La Macchia,* 41 Cal.2d 738, 753 [264 P.2d 15] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349-351 [144 P.2d 818].)

Defendants requested the court to give the following instruction : "A special benefit is one that is reasonably certain to result from the construction of the work. A mere possibility is not sufficient. Benefits resulting from other sources, such as the construction or operation of the Statler Hotel, or the growth of population in Los Angeles or in this particular portion of Los Angeles, are not special benefits. Any increase in value from such sources are to be reflected in the value of the land taken but are not to be included in your determination of special benefits." The instruction should have been given. The Statler Hotel and Office Building at the northwest corner of Figueroa Street and Wilshire Boulevard, a few blocks from Lots 52 and 53, was in course of construction at the time involved. One of plaintiff's experts testified that in his figure for special benefits he included within site prominence the fact that the property would be visible from the Statler Hotel and Office Building when it was completed. The fact, if a fact, that after the taking Lots 52 and 53 will be visible from the Statler, is not a special benefit. (*Beveridge* v. *Lewis,* 137 Cal. 619, 623-26 [67 P. 1040, 70 P. 1083, 92 Am.St. Rep. 188, 58 L.R.A. 581] ; *Los Angeles County* v. *Marblehead Land Co.,* 95 Cal.App 602, 614-15 [273 P. 131].) While the court gave a number of general instructions on the subject of special benefits this specific matter was not covered. The amount assessed by the jury for special benefits was approximately the amount testified to by this expert and it was higher than the amounts testified to by plaintiff's other ex-

perts. In view of the testimony of plaintiff's expert, this point should have been directly covered.

■ At the request of plaintiff the court gave the following instruction: "You are instructed that the term 'just compensation' means 'just' not only to the defendants whose property is taken for a public use, but also 'just' to the public which is to pay for it. In this connection, you are further instructed that it would be unjust to the public that the plaintiff, the People of the State of California, should be required to pay the defendants more than a fair compensation for the loss sustained by the appropriation of their property for the general good." Prior to the giving of the instructions, defendants requested that there be added to this instruction the following: "You are further instructed that it would be unjust to defendants that the plaintiff, the People of the State of California, should be required to pay the defendants less than a fair compensation for the loss sustained by the appropriation of their property." The court refused to make the addition. Defendants assert error. We do not approve of the instruction given at the request of plaintiff. Such instructions come too close to arousing the minds of jurors to their own interests as taxpayers and members of the public for whose "general good" the property is being taken. Such instructions serve no good purpose. It is obvious, however, that since the instruction was to be given, the requested addition should have been made.

The errors pointed out compel a reversal of the judgment. Defendants complain of a number of other rulings. Since, in view of what we have said, they are not likely to occur on a retrial, they need not be discussed.

In addition to parcel 5, the state sought to condemn another parcel owned by defendants described as parcel 5-A. Damages for the taking of parcel 5-A were settled by stipulation during the trial and are included in the judgment. Defendants appealed from the entire judgment with a minor exception not pertinent here. Defendants do not challenge that part of the judgment relating to parcel 5-A.

The appeal from the interlocutory and final judgments, insofar as they relate to parcel 5-A, is dismissed. The interlocutory and final judgments, insofar as they relate to parcel 5 (Amended), are reversed.

Shinn, P. J., concurred.

Wood (Parker), J., did not participate.