394 P.2d 641

Roy A. ROARK and Oleta Roark, husband and wife, Plaintiffs-Respondents,

v.

CITY OF CALDWELL, a Municipal Subdivision of the State of Idaho, Defendant-Appellant.

No. 9364.

Supreme Court of Idaho.

July 30, 1964.

Smith & Miller, Caldwell, for appellant.

Marcus, Leggat & Marcus, Boise, for respondents.

McFADDEN, Justice.

The respondents, hereinafter referred to as the plaintiffs, instituted this declaratory judgment action for a determination of the validity of an airport zoning ordinance adopted June 19, 1961, by appellant, City of Caldwell, hereinafter sometimes referred to as the City. This ordinance affected the property owned by the plaintiffs; after trial, the trial court held the ordinance to be unconstitutional, invalid and void, and entered judgment accordingly, from which judgment the City appealed.

The City in its brief cogently states the issue presented by this appeal to be whether the ordinance in question " * * * is an unconstitutional exercise of the police powers of the City of Caldwell in respect to the plaintiffs, * * *".

The facts leading to this litigation are briefly summarized as follows: In 1954 plaintiffs purchased 254 acres of agricultural property, twenty of which are within the corporate limits of the City of Caldwell, adjoining the Caldwell municipal airport on the southeast. Plaintiffs platted this twenty acre tract for residential purposes, as Third Parkside Addition to the City of Caldwell. The City approved this plat on September 6, 1955. Within the plat there are eighty separate lots. Plaintiffs sold four of them prior to June 19, 1961, the date of enactment of the ordinance in question. Prior to adoption of the ordinance, the City issued building permits for construction of dwellings on two of the lots, followed by construction of dwellings thereon. The City also conditionally issued a building permit as to a third lot which it later revoked.

The ordinance in question established certain zones extending southeasterly from the airport over the Third Parkside Addition, with different restrictions pertaining to the different classes of zones; the restrictions limit the uses to which the ground in a particular zone can be put, and also restricts the elevation of structures that may be erected within each particular zone. The purpose of the ordinance is stated to be to protect the Caldwell Municipal Airport runway approach areas, and to protect the harmonious urban development of the City of Caldwell, to protect the health and lives of the public including the users of the airport and to prevent improper concentration of population subject to airport hazards. The ordinance further states:

"It is hereby found by the Council in the City of Caldwell that the land uses prohibited and allowed hereby within the said zones and the regulations and conditions on the use of the land and establishment of business within said zones are required in the best interest of the health, safety and morals of the people of Idaho, the use and occupancy of the zones used in conjunction with the airport and the public use of said airport."

The ultimate result of the ordinance is to prohibit the use of portions of plaintiffs' platted ground for any purpose other than agriculture, and to prohibit the erection of structures of varying heights on other portions of such land. The parties stipulated that the Department of Aeronautics of the State of Idaho had never promulgated any airport zoning regulations with respect to the particular airport area and had no part in the city ordinance.

■ The principal question presented by this appeal is whether the ordinance conflicts with the provisions of Idaho Constitution Art. 1, Secs. 13 and 14,[1] and the Fourteenth Amendment to the United States Constitution.[2] It is fundamental that these constitutional provisions prohibit the taking of private property for a public use without just compensation.

Involved in this action are certain fundamental principles, one of which is the ownership of private property and the right to the free use and enjoyment thereof. Another fundamental principle is the basic authority of the government (subject to constitutional safeguards) to regulate the use and utilization of private property for the promotion of public welfare. In a case of comparable issues, the Supreme Court of Washington, most appropriately stated in Ackerman v. Port of Seattle, 55 Wash.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960):

"\* \* \* At times, as in the instant litigation, these principles are in conflict, and the courts are called upon to resolve the resulting problem in human and legal relationships. In doing so, the courts constantly emphasize the concepts of (1) 'regulation' under the police power, and (2) 'constitutional taking or damaging' under the eminent domain power. When restrictions upon the ownership of private property fall into the category of 'proper exercise of the police power,' they, validly, may be imposed without payment of compensation. The difficulty arises in deciding whether a restriction is an exercise of the police power or an exercise of the eminent domain power. When private property rights are actually destroyed through the governmental action, then police power rules are *usually* applicable. \* \* \* But, when private property rights are taken from the individual and are conferred

1. "\* \* \*

"No person shall \* \* \* be deprived of life, liberty or property without due process of law." Article 1, § 13, Idaho Constitution.

"\* \* \*

"Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." Article 1, § 14, Idaho Constitution.

2. "\* \* \* No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Amendment 14, § 1, Constitution of the United States.

upon the public for public use, eminent domain principles are applicable."

■ Whether this ordinance amounts to a taking of private property, or whether it is a proper measure under the police power, necessitates an examination into the rights of a property owner near an airport. In 1931, the Idaho legislature enacted the following statutory provisions dealing with the relationship of property owners to the users of airspace:

"Sovereignty in space above the lands and waters of this state is declared to rest in the state, except where granted to and assumed by the United States pursuant to a constitutional grant from the people of this state." I.C. § 21–202.

"The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the right of flight described in section 21–204" I.C. § 21–203.

"Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. * * * ". I.C. § 21–204.

It is necessary to read these statutes in conjunction with the enactments of Congress under the commerce clause of the United States Constitution, as interpreted by the Supreme Court of the United States. In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, the Supreme Court, stated:

"We have said that the airspace is a public highway. Yet it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run. The principle is recognized when the law gives a remedy in case overhanging structures are erected on adjoining land. The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land. See Hinman v. Pacific Air Transport, 9 Cir., (CCA 9th) 84 F.2d 755. The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material. As we have said, the flight of airplanes, which skim the surface but do not touch it, is as much an appropriation of the use of the land as a

more conventional entry upon it. We would not doubt that if the United States erected an elevated railway over respondents' land at the precise altitude where its planes now fly, there would be a partial taking, even though none of the supports of the structure rested on the land. The reason is that there would be an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it. While the owner does not in any physical manner occupy that stratum of airspace or make use of it in the conventional sense, he does use it in somewhat the same sense that space left between buildings for the purpose of light and air is used. The super adjacent airspace at this low altitude is so close to the land that continuous invasions of it affect the use of the surface of the land itself. We think that the landowner, as an incident to his ownership has a claim to it and that invasions of it are in the same category as invasions of the surface.

" * * *

"The airplane is a part of the modern environment of life, and the inconveniences which it causes are normally not compensable under the Fifth Amendment. The airspace, apart from the immediate reaches above the land, is part of the public domain. We need not determine at this time what those precise limits are. * * *"

United States v. Causby, was decided in 1946. At that time the glide path of aircraft for take-off and landings was not a part of the "navigable airspace." In 1958, however, Congress revised the definition of "navigable airspace", to include the glide path of aircraft for landings and take-off. 72 Stat. 739, 49 U.S.C.A. § 1301(24). Even so, the Supreme Court of the United States in Griggs v. County of Allegheny, 369 U. S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, held that flights in the public domain on landings and take-off constituted an interference with the individual's property rights amounting to "taking" in the constitutional sense, of an air easement for which compensation must be paid, and held the defendant county liable to pay such compensation. Justice Douglas, in Griggs v. County of Allegheny in the majority opinion, reasoned as follows:

" * * * A county that designed and constructed a bridge would not have a usable facility unless it had at least an easement over the land necessary for the approaches to the bridge. Why should one who designs, constructs, and uses an airport be in a more favorable position so far as the Fourteenth Amendment is concerned? That the

instant 'taking' was 'for public use' is not debatable. * * *

"The glide path for the northeast runway is as necessary for the operation of the airport as is a surface right of way for operation of a bridge, or as is the land for the operation of a dam. See United States v. Virginia Electric [& Power Co.] Co., 365 U.S. 624, 630, 81 S.Ct. 784, 5 L.Ed.2d 838 [845]. As stated by the Supreme Court of Washington in Ackerman v. Port of Seattle, 55 Wash.2d 400, 401, 413, 348 P.2d 664, 671, 77 A.L.R.2d 1344. '* * * an adequate approach way is as necessary a part of an airport as is the ground on which the airstrip, itself, is constructed * * *.' Without the 'approach areas,' an airport is indeed not operable. Respondent in designing it had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough." at 369 U.S. 89, 90, 82 S.Ct. 534.

From a consideration of the above authorities it is our conclusion that a landowner has a property right in the reasonable use of the airspace above his land

which cannot be "taken" for public use without just compensation.[3]

The next problem to be considered is whether there has been a taking of any of the plaintiffs' property rights in the airspace above their land by the ordinance's height restrictions. The Supreme Court of Indiana recently dealt with a similar question in the case of Indiana Toll Road Commission v. Jankovich, 193 N.E.2d 237 (Ind. 1962). In that particular case the Supreme Court of Indiana held that a zoning ordinance restricting the height of buildings within a specified distance of an airport, without providing for payment of compensation, unconstitutionally appropriated the property rights of the landowner in the airspace above the land. That court, in language appropriate here, stated:

" * * * In considering this point the distinction must be made between zoning regulations which merely restrict the enjoyment and use of property through a lawful exercise of the police power, and a taking of property for a public use, for which compensation must be paid. In the former instance, where the owner of property

3. The questions discussed in Griggs v. County of Allegheny, and related questions, have been the subject of a number of articles in recent legal periodicals. See: 50 A.B.A.J. 345 (1964); 35 U. Colo.L.Rev. 259 (1963); 30 Fordham L. Rev. 803 (1962); 66 Dick.L.Rev. 107 (1961); 48 Ky.L.J. 273 (1960); 13 Hastings L.J. 397 (1962); 1962 Law Forum 274; 23 Md.L.Rev. 96 (1963); 47 Minn.L.Rev. 889 (1963); 57 N.W.U.L. Rev. 346 (1962); 24 U.Pitt.L.Rev. 603 (1963); 14:2 W.Res.L.Rev. 376 (1963).

is merely restricted in the use and enjoyment of his property, he is not entitled to compensation. A common example of such an authorized restriction is the imposition on property of building set-back lines (citing cases.)

"However, mere regulation under the police power which can be modified at the discretion of regulating authority is wholly different from the taking or appropriating of private property by the government for a specific public use. The latter can be affected only if compensation is provided. Pennsylvania Coal Co. v. Mahon (1922), 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322; 1 Metzenbaum, Law of Zoning 70–76 (2d ed. 1955). Griggs v. Allegheny, supra."

In Yara Engineering Corp. v. City of Newark, 132 N.J.L. 370, 40 A.2d 559 (1945), the Supreme Court of New Jersey considered an airport zoning ordinance which restricted the height of structures within approach and turning zones. In holding the ordinance to be unconstitutional as a taking of private property for public use, within the ambit of the New Jersey State Constitution and the Fourteenth Amendment of the United States Constitution, that court stated:

"* * * The City may not under the guise of an ordinance acquire rights in private property which it may only acquire by purchase or by the exercise of its power of eminent domain."

* * *

See also: Rice v. City of Newark, 132 N. J.L. 387, 40 A.2d 561 (1945); Annot. 77 A.L.R.2d 1355, 1362.

We are not unmindful of a decision of the Supreme Court of Florida, which sustained a zoning ordinance involving height restrictions similar to the ones herein involved. In Waring v. Peterson, 137 So.2d 268, 270 (Fla.App.1962), that Court stated: "We conclude that the ordinance constitutes a reasonable and proper exercise of the police power. Moreover, even if the question is 'fairly debatable', the court should not substitute its judgment for that of the enacting governmental agency." In arriving at this conclusion the Florida Supreme Court relied upon the case of Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority, 111 So.2d 439 (Fla. 1959), in which case the statute authorizing such zoning ordinances was upheld as constitutional. It was there pointed out that the defendants failed to substantiate their contention that the enforcement of the height limitations of the ordinance would amount to an unlawful "taking" of their property, as there was no showing that a reduction in the height of their tower, which was 41 feet, to conform to the zoning height limitation, would depreciate the value of the defendant's property.

**566**

■■ Unlike the Florida case, here the trial court found a loss in value to the property if the restrictions are enforced, based on substantial competent evidence. When property of an individual is taken for use by the public, the provisions of Idaho Constitution, Article 1, § 14 must be complied with. See Annot: 77 A.L.R.2d 1355, § 3, pg. 1362.[4]

■ Finally, the question to be resolved is whether the provisions of the ordinance restricting the use of plaintiff's land either to agricultural uses or in the other zones, to single dwelling units, constitutes an unlawful taking for public use. The Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 514, 19 A.L.R. 1387 (1921), the Supreme Court of Texas, stated in language appropriate here:

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right."

See also: Ackerman v. Port of Seattle, 55 Wash.2d 400, 348 P.2d 664, 77 A.L.R.2d

---

4. A good summary of our conclusion appears in: Dunham, Griggs v. Allegheny County In Perspective; Thirty Years of Supreme Court Expropriation Law, 1962 Supreme Court Review 90, a University of Chicago publication: "Do the holdings in Causby and Griggs, that interference with neighboring land use is a compensable taking, mean that the government cannot, without compensation, prevent the interference from arising, for example, by zoning? If the purpose of the zoning is to avoid paying the compensation that Causby and Griggs require, the Nashville case (Nashville C. & St. L. Ry. v. Walters, 294 U.S. 405, [55 S.Ct. 486, 79 L.Ed. 949] (1935) would seem to make the zoning illegal without compensation. If it is asserted · that structures and uses endanger the aircraft and its users so that the existing structures must be removed, as in the Town of Hempstead case (Goldblass [Goldblatt] v. Town of Hempstead, 369 U.S. 590, 594 [82 S.Ct. 987, 8 L.Ed.2d 130] (1962) then the principle of the Pandhandle case, (Pandhandle [Panhandle] v. Highway Commission, 294 U.S. 613 [55 S.Ct. 563, 79 L.Ed. 1090] (1935), involving removal of an existing gas pipeline from the right of way of a new highway would apply, requiring compensation. For the problem under consideration here, the one thing that Causby and Griggs decide is that the expectation of enjoyment free from interference from landing aircraft, military or civil, is a protected expectation that can be destroyed only on payment of compensation."

1344. Even though there is great public benefit to be derived in the maintenance of an adequate airport with minimum standards for approaches for take-off and landing of planes and the purposes of this ordinance are meritorious, public benefit is not in most cases sufficient reason in and of itself to destroy the use of private property without payment of just compensation. Nashville, C. & St. L. Ry. Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935).

It is our conclusion that the provisions of the ordinance under consideration restricting the height of structures on the plaintiffs' property and limiting the use of the land constitutes the taking of private property for public use in the constitutional sense. No compensation having been provided for the taking of such property, the trial court correctly held this ordinance unconstitutional as the taking of private property for public use without just compensation.

The views expressed herein render it unnecessary to consider the remaining issues raised on this appeal.

The judgment of the trial court is affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.