437 P.2d 615

CITY OF CALDWELL, a Municipal Corporation, Plaintiff-Respondent,

v.

Roy A. ROARK and Oleta Roark, husband and wife, Defendants-Appellants.

Aigot Larson, Canyon County, Idaho, Any and all Unknown Owners, Defendants.

No. 9915.

Supreme Court of Idaho.

Feb. 20, 1968.

Marcus, Leggat & Marcus, Boise, for appellants.

Gigray, Boyd & Downen, Caldwell, for appellee.

TAYLOR, Justice.

Plaintiff (respondent) brought this action February 24, 1965, to acquire, by right of eminent domain, approximately 9.48 acres of land owned by defendants (appellants) Roy A. and Oleta Roark, and lying within the limits of the City of Caldwell, in Canyon County. The cause was tried to a jury on the issue of the value of the land taken. No severance damage was sought. Defendants brought this appeal from the judgment entered upon the verdict of the jury awarding them $12,500 compensation for the land taken. The land taken was part of a larger tract acquired by defendants in 1954. The portion here involved, together with other land lying within the city limits, was platted by defendants for development for residential purposes, and was designated as the Third Parkside Addition. The plat was accepted and approved by the city and filed of record. As platted, the addition contained 80 separate lots. The portion taken by the city in this action contained 49 lots. Streets and alleys had been laid out, but the corners of the lots were not staked. Gas, electric power, water and sewer service had been made available to the property.

The land lies adjacent to and corners on the southeast corner of the Caldwell municipal airport and opposite the southeast end of the airport's only runway. Planes taking off and landing necessarily fly low over the property. The city attempted to impose certain building restrictions upon the property under authority of an airport zoning ordinance adopted in June, 1961. In Roark v. City of Caldwell, 87 Idaho 557, 394 P.2d 641 (1964), this court held the ordinance invalid in that its application to this property would constitute a taking of private property for public use without just compensation in violation of art. 1, § 14, of the state constitution.

Thereafter, the city brought this action to acquire title to the property by right of eminent domain for municipal airport purposes. The taking was alleged to be necessary for the enlargement, improvement and maintenance of the airport, as authorized by I.C. § 21–401.

On this appeal defendants urge that the value of the property, as fixed by the jury, was entirely inadequate, and that the low valuation was the result of errors committed by the trial court in giving and refusing certain instructions and in overruling their objection to evidence of flights to and from the airport.

Defendants assign as error the giving of instruction No. 8, as follows:

"In this case the defendants have introduced testimony as to the value of the property if it were sold as individually platted lots to various buyers over a reasonable length of time. This testimony was permitted to stand as an indication of what defendants and their witnesses believe the property would be worth if sold in such fashion, and as information (if you find such evidence of the individual lot value for future sales within a reasonable time in the future to be reliable) that an informed seller and an informed buyer would have and keep in mind in their negotiations to effect a sale of the whole piece of land being taken at one time at a price that would constitute the fair market value of the lands being taken.

"However, what the total of the lots would bring if sold individually to various buyers at various times is not the correct method of determining fair market value in this case. The correct yardstick is the 'fair market value', as that term has been defined for you, as of the date of February 24, 1965 and before this case was filed, with the whole parcel being

sold in its then condition in one sale to an informed buyer. You may consider the fact that the land was platted, had such improvements and available utilities as you find under the evidence it did have, but you must consider the whole parcel as sold to an informed buyer."

The language which defendants hold to be erroneous is:

"* * * what the total of the lots would bring if sold individually to various buyers at various times is not the correct method of determining fair market value in this case." and

"* * * with the whole parcel being sold in its then condition in one sale * * *."

Defendants also object to the following, in instruction No. 4:

"* * * you must find the amount plaintiff must pay defendants by reason of the condemnation and taking of the 9.48 acres of land."

Defendants contend that the jury should have been required to find the value of the lots, in the portion of the platted area condemned, separately as separate parcels of property, rather than the aggregate value of the lots as constituting one parcel, as instructed by the court. They cite subsection 1 of I.C. § 7–711 [1], and Big Lost River Irrigation Company v. Davidson, 21 Idaho 160, 121 P. 88 (1912). In that case the court criticised the verdict of the jury which found the aggregate value of several parcels or tracts of land in one sum. However, in that case there were several ownerships or separate estates in the land being condemned. In passing the court observed:

"* * * where the tract is a single or consolidated tract, the value then may be fixed as a single parcel or tract. 'Parcel' or 'tract' of land, as used in this section, does not mean legal subdivision, but a consolidated body of land, and the finding of the jury may be upon each single parcel or tract of land." 21 Idaho at 171, 172, 121 P. at 92.

In this case there were no separate ownerships involved and the tract sought by plaintiff, and—except for the elimination of one lot on the far side of the tract from the airport which the city has not sought to condemn—the tract constituted a single quadrangular, consolidated, body of land. The court correctly instructed the jury that the value should be fixed for the entire tract as one parcel. The court admitted testimony by defendants' witnesses as to the value of the separate lots included in the parcel sought, and the aggregate value thereof, for homesite subdivision purposes. This purpose was represented to the court by defendants and their witnesses as the "highest and best" use to which the land could be devoted. Its value for the highest and best use to which the land was adaptable was the basis upon which defendants were entitled to recover. State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112 (1955); Idaho Farm Development Co. v. Brackett, 36 Idaho 748, 213 P. 696 (1923); Idaho-Western Ry. Co. v. Columbia, etc. Synod, 20 Idaho 568, 119 P. 60, 38 L.R.A.,N.S., 497 (1911); Napa Union High School Dist. v. Lewis, 158 Cal.App.2d 69, 322 P. 2d 39 (1958); People v. Loop, 127 Cal. App.2d 786, 274 P.2d 885 (1954); United States v. 3969.59 Acres of Land, 56 F.Supp. 831 (D.C.1944); McDaniel v. Mace, 47 Iowa 509 (1877); 27 Am.Jur.2d, Eminent Domain, § 280.

However, where the entire parcel of land, as a unit, is taken at one time by condemnation, the jury is required to fix the value of the entire parcel as a unit as of the time the summons is issued. I.C. § 7–712. This value cannot properly be determined by aggregating the individual

1. "1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed."

sales value which separate lots may bring when sold to individual prospective home builders over a period of time in the future, for the reason that such a basis of valuation would permit the jury to speculate upon future developments. The jury was properly permitted to consider the prospective value of the property for that purpose in determining its value as a single parcel at the date of the summons.

"* * * The test is not what the lots will bring when and if 62 willing buyers come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a willing buyer of the whole tract." State v. Tedesco, 4 Utah 2d 248, 291 P.2d 1028 (1956).

Also, State by and through Road Commission v. Noble, 6 Utah 2d 40, 305 P.2d 495 (1957); State v. Deal, 191 Or. 661, 233 P.2d 242 (1951); State by and through State Highway Commission v. Nunes, 233 Or. 547, 379 P.2d 579 (1963); Wassenich v. City and County of Denver, 67 Colo. 456, 186 P. 533 (1920); United States v. 3.544 Acres of Land, etc., 147 F.2d 596 (3rd Cir. 1945); State Highway Commission v. Conrad, 263 N.C. 394, 139 S.E.2d 553, 12 A.L.R.3d 1055 (1965).

"* * * The valuation must be on the basis of what a willing purchaser would pay now and not what a number of purchasers might be induced to pay in the future for the land in smaller parcels." Utah Road Commission v. Hansen, 14 Utah 2d 305, 383 P.2d 917, at 920, 1963.

"* * * They are not to determine how it could best be divided into building lots, nor to conjecture how fast they could be sold, nor at what price per lot. A speculator or investor, in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present pur-

chaser would be willing to pay for it in the condition it is now in." Pennsylvania S. V. R. Co. v. Cleary, 125 Pa. 442, 17 A. 468, at 470 (Pa.1889).

Defendants further urge that instruction No. 8 required the jury to disregard the fact that the land taken was part of a larger tract, and "any increased value which inheres in it as part of a larger tract." The language of the instruction is not susceptible of this construction. Evidence was admitted by map, plat, pictures, and oral testimony, that the parcel taken was a part of a larger platted tract. The jury was instructed to consider all surrounding conditions, as well as "the most profitable use for which the lands were adaptable" by instructions 4, 5, and 6.

Defendants also assign as error the giving of instruction 9, as follows:

"In considering the fair market value of the land taken in this case as of February 24, 1965, you may not consider any decrease in the market value of the condemned land as of that time because of the low overflight of defendants' lands by planes using the Caldwell Municipal Airport. In other words, you are to determine what market value the land being taken would have had free of any effects caused by low overflight, and you may consider any effects caused as of that time due to a higher concentration of planes flying over the property taken because of the airport, or such noise or other inconvenience caused by higher flying aircraft and the proximity of the airport to the affected land. By higher flying aircraft is meant planes flying at such height so as not to interfere with the reasonable use and enjoyment of defendants' lands.

"The reason for this non-lowering of market value because of the low overflight is that prior to the filing of this action there was another lawsuit between these same parties which went to the Idaho Supreme Court. The Supreme Court ruled 'that a landowner has a property right in the reasonable use of the air

space over his land which cannot be "taken" for public use without just compensation', and that the building height restrictions which the City of Caldwell imposed upon defendants' lands by ordinance was an invasion of defendants' right to reasonable use and enjoyment of their lands, and that therefore said ordinance was invalid. That ordinance in substance provided for a clear space free from obstructions in conformity with the glide path testified to in this case; that is to say, a glide path of 20 to 1 ending at altitude zero at the end of the runway.

"The City of Caldwell, however, has a duty to protect the flying public by providing a clear space at the end of its runways in conformity with adequate safety regulations imposed by the Federal Aviation Agency, and hence to continue with its maintenance of the airport in question the City of Caldwell had to bring this condemnation action.

"What has happened between the parties before this lawsuit and the fact that this lawsuit has been filed must not prejudice you in any way for or against either of the parties. It is your province to fix what is the just compensation for the taking."

█ In Roark v. City of Caldwell, 87 Idaho 557, 394 P.2d 641 (1964), upon authority of I.C. §§ 21–203, 21–204, and United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, we held that the owner of land is vested with ownership of the space above the land to the extent that he can reasonably use such space in connection with the land, and that such ownership and right could not be taken from him without just compensation. The effect of that decision was that planes flying low over defendants' land in taking off and landing on the adjacent airport constituted an invasion of defendants' property and a taking within the constitutional provision requiring just compensation therefor. Having that decision in mind the court in this case in instruction No. 9 properly advised the jury that such low flying air traffic

over the land could not be taken into consideration in fixing its value in this proceeding, and that defendants were entitled to a valuation free from the effects of such low overflight. By that instruction the court also properly instructed the jury that they might consider the effects of any concentration of high flying aircraft occasioned by the presence of the airport adjacent to the property. "High flying aircraft" was correctly defined to include planes flying at such height as not to interfere with the reasonable use and enjoyment of defendants' lands. This part of the instruction was authorized by I.C. § 21–204. It is within the competence of the jury to determine at what height flight of airplanes would "interfere with the reasonable use and enjoyment of defendants' lands." In that respect the instruction was more favorable to defendants than a strict application of § 21–204 would have been. It was on this phase of the case that the court properly overruled defendants' objection to testimony as to the amount and character of air traffic using the Caldwell airport.

█ Defendants complain further of instruction No. 9 in its reference to the duty of the plaintiff to protect the flying public by providing a clear space at the end of its runway in conformity with safety regulations. The reference was to facts of which the court takes judicial notice, I.C. § 9–101, City of Lewiston v. Frary, 91 Idaho 322, 420 P.2d 805 (1966), and was harmless in this case because defendants do not challenge plaintiff's authority to exercise its right of eminent domain in the premises. The court further protected defendant's interest in the instruction by cautioning the jury that it must not be prejudiced by prior happenings between the parties.

Defendants assign as error the refusal to give their requested instructions Nos. 1, 2, 3, 6, and 8. However, defendants in their brief agree that the reference in these requested instructions to severance damage should have been omitted.

Requested instruction No. 1 sought to have the court describe the land to the jury

as Blocks 8, 9 and 10 of Third Parkside Addition as it was described in plaintiff's complaint.

Defendants' requested instruction No. 3 was given by the court in its instruction No. 5, except that the words "or purchasers" were deleted by the court, leaving the reference to "purchaser" in the singular, in defining fair market value.

The contention as to the refusal of requests 1 and 3 is an extension of defendants' claim that the court should have required the jury to base its determination of value on the separate platted lots, rather than on a sale of the tract as a whole, at one time. This contention we have herein concluded adversely to defendants.

Requested instructions Nos. 2, 6, and 8 were covered by instructions given.

Judgment affirmed.

Costs to respondent.

McQUADE, McFADDEN and SPEAR, JJ., and DONALDSON, D. J., concur.