HAGEMAN ET AL., APPELLEES, *v.* BOARD OF TRUSTEES OF
WAYNE TOWNSHIP ET AL., APPELLANTS.

[Cite as Hageman v. Bd. of Trustees, 20 Ohio App. 2d 12.]

(No. 3393—Decided April 7, 1969.)

*Mr. Mason Douglass*, for appellee.

*Mr. Lee C. Falke*, prosecuting attorney, and *Miss Lillian M. Kern*, for appellants.

*Mr. Paul W. Brown,* attorney general, and *Mr. Charles S. Rawlings,* for Division of Aviation, Ohio Department of Commerce.

SHERER, J. This is an action instituted in the Common Pleas Court of Montgomery County for a declaratory judgment by certain owners of real estate in Wayne Township, Montgomery County, seeking a declaration that the zoning regulations adopted by the Wright-Patterson Air Force Base Joint Airport Zoning Board for their property and the property of owners of other lands in such township similarly situated, consisting of approximately 3,500 acres, are unconstitutional. The action seeks a permanent injunction enjoining the enforcement of such regulations.

The Common Pleas Court held that such regulations are confiscatory, unreasonable, unconstitutional and void, and permanently enjoined their enforcement. This appeal is from that judgment.

The action named as defendants various governmental bodies, including the Wright-Patterson Air Force Base Joint Airport Zoning Board and the Zoning Board of Appeals created under the regulations. These named governmental bodies have appealed from the judgment of the Common Pleas Court and have assigned the following errors:

"(1) The Court of Common Pleas erred in overruling the demurrers of Wright-Patterson Air Force Base Joint Airport Zoning Board and the Zoning Board of Appeals, which demurrers were on the ground that the petition did not state a cause of action against these defendants.

"(2) The Court of Common Pleas erred in finding that the Wright-Patterson Air Force Base Joint Airport Zoning Board's Regulations are confiscatory, unreasonable, unconstitutional and void as applied to the Wayne Township area and that they are to be of no effect or control over and upon the use of land or improvements thereon in Wayne Township, or over and upon any of the plaintiffs, or the class represented by them."

The plaintiffs, appellees herein, allege that they own

14

real estate in Wayne Township, which has been designated by the Wright-Patterson Air Force Base Joint Airport Zoning Board as an Air Hazard Corridor; that the zoning board adopted certain regulations under favor of Section 4563.01 *et seq.* of the Revised Code affecting approximately 3,500 acres in the township, which includes their property and the property of others similarly situated; that prior to the enactment of such regulations, the Trustees and electors of Wayne Township had enacted comprehensive zoning regulations for the township; that the regulations adopted by the Wright-Patterson Air Force Base Joint Airport Zoning Board largely involve the flight operations of airplanes and that the sole purpose of the regulations is related to the flight patterns of airplanes and has no relevancy to the moral, social, and economic life of the community; that the regulations attempt to repeal the zoning regulations adopted by Wayne Township; that the effect of the adoption of the regulations is to take the lands of the plaintiffs without compensation and is confiscatory; that such taking adversely affects the normal development of the area affected, adversely affects the operation of the schools of Wayne Township and of services to the area; that it strips the township of the justly anticipated tax revenues by prohibiting industrial, business and housing development necessary for the expanding Wayne Township community; and that the regulations establish a board of appeals with unlimited, unchartered, and *de facto* jurisdiction, power, and authority as to the instrumentation and rules adopted by it and over meetings conducted by it and require that any person aggrieved by any decision of any administrative agency established in its administration may appeal to such board of appeals.

We see no merit in the first assignment of error. The petition alleges facts which properly invoke the jurisdiction of the Common Pleas Court to make a declaration of the rights of the parties hereto as contemplated in Ohio's declaratory judgment statute.

The next question to be determined is whether the Common Pleas Court properly determined that the regula-

tions adopted are confiscatory, unreasonable, unconstitutional and void.

The regulations seek to limit the right of the owners of property lying in a corridor northwest of and adjacent to the Wright-Patterson Air Force Base to use their properties in accordance with an existing comprehensive zoning plan adopted for all of Wayne Township. This corridor is used by Wright-Patterson Air Force Base in the maneuvering of aircraft incident to landings and take-offs of aircraft using that base. Most aircraft accidents occur incident to take-offs and landings.

The regulations limit the lighting in the corridor, the density of the concentration of people therein by limiting development to two residences per acre, and otherwise, and limit the height of structures and objects of natural growth therein.

The defendants seek to justify the regulations as a proper exercise of police power through zoning, arguing that the regulations were enacted for the safety of the people who live there and who would be living there but for the regulations, and for the safety of the persons and property of those who land and take off at the base.

Included in the regulations is a statement of purpose, as follows:

"2. Airport hazards within the Wright-Patterson Air Force Base Airport Hazard Area endanger the lives and property, not only of persons using the flight facilities at Wright-Patterson Air Force Base but also the lives and property of persons residing in those areas included within the Wright-Patterson Air Force Base Airport Hazard Area. Accordingly, it is declared: (1) That the creation or establishment of an airport hazard is a public nuisance and an injury to the region served by the Wright-Patterson Air Force Base; (2) that it is necessary and in the interest of public health, public safety, and general welfare of the inhabitants of Greene, Montgomery, Clark, and Miami Counties that the creation or establishment of airport hazards be prevented to obviate the destruction or impairment of the utility of the Wright-Patterson Air Force Base

Airport and the public investment therein; (3) that it is necessary in the interest of the public health, public safety and general welfare of the inhabitants of Greene, Montgomery, Clark, and Miami Counties and to minimize injury, loss of life, and hazards to the safety of persons or security of property within the approach, transitional, inner horizontal, and conical areas at Wright-Patterson Air Force Base, that land use, population density and concentrations of persons within such areas be regulated and/or restricted; and (4) that the prevention of airport hazards and the regulation and restriction of land use, population density, and concentration of persons, within the approach, transitional, inner horizontal and conical areas are to be accomplished by the exercise of local government police power.''

The regulations adopted seek to implement the stated purposes of the regulations to which we have alluded and were adopted pursuant to the provisions of *Sections 4563.01 to 4563.99 of the Revised Code.*

The Common Pleas Court held that the regulations adopted were not zoning regulations under the exercise of the police power but constituted a taking of private property for a public purpose without compensation and were, therefore, unreasonable, unconstitutional, confiscatory and void.

The question to be determined is whether the regulations are a proper exercise of the police power to zone the property affected for the safety of persons living in the area and persons who, but for the regulations, would be living in and using the area, or, whether, in fact, the regulations seek to take private property for a public use without compensation.

The question posed is answered by decisions of the Supreme Court of the United States, and these answers fully support the conclusions reached by the Common Pleas Court in this case. One of the fundamental principles involved in this action is the ownership of private property and the right to the free use and enjoyment thereof. Another basic principle is the authority of the government

(always subject to constitutional safeguards) to regulate the use and utilization of private property for the promotion of the public welfare. At times, as in the instant litigation, these principles are in conflict, and the courts are called upon to resolve the resulting problem in human and legal relationships. In doing so, the courts constantly emphasize the concepts of (1) "regulation" under the police power, and (2) "constitutional taking or damaging" under the eminent domain power. When restrictions upon the ownership of private property fall into the category of "proper exercise of the police power," they, validly, may be imposed without payment of compensation. The difficulty arises in deciding whether a restriction is an exercise of the police power or the exercise of the eminent domain power. When private property rights are actually destroyed through the governmental act, then police power rules are *usually* applicable. But, when private property rights are taken from the individual and are conferred upon the public for public use, eminent domain principles are applicable. See *Ackerman* v. *Port of Seattle* (1960), 55 Wash. 2d 400, 348 P. 2d 664, 77 A. L. R. 2d 1344.

That case quotes the language of Mr. Justice Holmes in *Pennsylvania Coal Co.* v. *Mahon* (1922), 260 U. S. 393, 415, 416, 67 L. Ed. 322, 43 S. Ct. 158:

"* * * The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. * * * When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

"* * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. * * *"

18

The Supreme Court of the United States has also given recognition to property rights in air space accruing to the owner of the land beneath. In *United States* v. *Causby* (1946), 328 U. S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062, the problem presented was whether property was taken, within the meaning of the Fifth Amendment to the Constitution of the United States, by frequent and regular flights of military aircraft over the claimant's land at low altitudes. The court held that there had been a taking of an easement over the property for which compensation had to be paid, and stated, at page 264:

"* * * The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land. * * * The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material. * * *"

And, in *Causby*, at page 264, it is said:

"* * * Yet it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run. The principle is recognized when the law gives a remedy in case overhanging structures are erected on adjoining land. * * *"

The *Causby* case was reaffirmed by the Supreme Court of the United States in *Griggs* v. *Allegheny County*, 369 U. S. 84, 89, 90, 7 L. Ed. 2d 585, 82 S. Ct. 531, rehearing denied, 369 U. S. 857, 8 L. Ed. 2d 16, 82 S. Ct. 931, involving frequent low landings and take-offs over the residence of the petitioner. The Supreme Court held that there had been a taking of property in violation of the Fourteenth Amendment. The reasoning of the court was expressed as follows:

"* * * A county that designed and constructed a bridge would not have a useable facility unless it had at least an easement over the land necessary for the approaches to the bridge. Why should one who designs, constructs, and uses an airport be in a more favorable

position so far as the Fourteenth Amendment is concerned? That the instant 'taking' was 'for public use' is not debatable. * * *"

Such reasoning and conclusions were followed by the Supreme Court of Idaho in the case of *Roark* v. *Caldwell* (1964), 87 Idaho 557, 394 P. 2d 641, and by the Supreme Court of Indiana in *Indiana Toll Road Commission* v. *Jankovich* (1963), 244 Ind. 574, 193 N. E. 2d 237.

The defendants take exception to the statement of the Common Pleas Court in its opinion that the sole beneficiary of the regulations is Wright-Patterson Air Force Base, and that, therefore, the plaintiffs' rights to the use of their land as provided in the existing comprehensive Zoning Regulations of Wayne Township have been taken for public use. Defendants argue that the regulations are designed to assure the safety of the people and property now in the hazard zone and people and property who would be in such zone if the area is permitted to develop in accordance with the Wayne Township Zoning Plan. There is no threat to the safety of the people and property in such area, now or in the future, inherent in the development of the area in question under the Wayne Township Zoning Plan. The source of the threat to their safety lies in the present and future uses of Wright-Patterson Air Force Base, which are uses for the benefit of a governmental agency. Therefore, there is a taking of private property for public use.

The regulations in issue attempt to protect both the people in the hazard area and their property and those who use the facilities at Wright-Patterson Air Force Base and their property. If it be conceded that the people in the area are benefited by the regulations in that their safety is enhanced, it must likewise be conceded that those who use the facilities of Wright-Patterson Air Force Base for public purposes are benefited. The owners of the land here cannot be required to bear the cost of insuring the safety of the latter. There is nothing in the regulations or in the state statutes under which they were adopted whereby it could be determined what share of the burden

20

of insuring the safety of all should be borne by the owners of the land and what share of the burden is to be borne by the public in eminent domain proceedings. The Common Pleas Court said that there is no mutuality present; that the owners of the land are required to assume the full burden while Wright-Patterson Air Force Base acquires new benefits without making any compensation. There is nothing in the state statutes which authorizes the Wright-Patterson Air Force Base Joint Airport Zoning Board to exercise powers of eminent domain.

We must conclude, therefore, that the effect of the regulations here is a taking of private property for a public use without compensation and that the regulations are confiscatory, unreasonable, unconstitutional and void.

We see no error in the judgment and conclusions of the Common Pleas Court, and the judgment will be affirmed.

*Judgment affirmed.*

KERNS, P. J., and CRAWFORD, J., concur.