CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, *Appellant*, v. GEORGE.

Division Two, June 14, 1898.

1. **Condemnation**: DAMAGES. The person whose land is taken for railroad purposes by the right of eminent domain, is entitled by way of damages to the land actually taken for the right of way, and the damages occasioned thereby to the balance of the farm of which it forms a part.

2. ———: ———: INSTRUCTION: DOUBLE DAMAGES. An instruction that told the jury to allow defendant "the value of the land actually taken for the right of way," and the "further sum, if any, as the jury may find from the evidence to be the damages to the whole tract or farm, of which the right of way forms a part," is subject to verbal criticism, yet it is not erroneous as directing double damages.

3. ———: ———: ISOLATED LANDS. It is held in this case that in none of the three instructions objected to by appellant, were the jury told that an isolated piece of land was to be considered by them as a part of the landowner's farm, in their assessment of damages for the right of way and for the diminution in value to such farm from establishing the same through it.

4. ———: EXCLUSIVE POSSESSION: RIGHT OF OWNER OF FEE. When a railroad company condemns land for its right of way, it has the right to the exclusive possession of the entire part condemned, and it is only by consent of the company that the owner of the fee in the land can use the surface for any purpose. Therefore, an instruction that told the jury that if a valuable pond could not be maintained because of the fact that "it extends onto the right of way condemned by the railroad company," they should consider that fact in estimating the damages, is not to be condemned.

5. ——: JUDGMENT: TECHNICAL QUESTION. This court will not reverse a judgment because questions of such a technical character that the rights of appellant could not have been prejudiced thereby, were asked and erroneously permitted in the face of objections.

6. ——: EXCESSIVE DAMAGES. The estimation of damages is the province of the jury, and where their verdict is supported by substantial evidence and it has met the approval of the trial judge, this court will not interfere on the ground that it is excessive.

*Appeal from Mercer Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

*M. A. Low* and *W. F. Evans* for appellant.

(1) The court erred in giving to the jury instruction number 2, on motion of defendant. *Railroad v. Porter*, 112 Mo. 361; *Railroad v. McGrew*, 104 Mo. 289; *Doyle v. Railroad*, 113 Mo. 288. (2) The court erred in giving each of the three instructions upon the measure of the damages, given on motion of defendant, in that said instructions direct the jury to consider the damage to all the land owned by defendant, when it is admitted that forty acres of the land is a quarter of a mile away from the residue, and there is no evidence that said forty is used in connection with such residue. *Penna. Co. v. Railroad*, 151 Pa. St. 338; *Cameron v. Railroad*, 42 Minn. 76; *Peck v. Railroad*, 36 Minn. 343; *Railroad v. Wilkins*, 45 Kan. 679. (3) The court erred in refusing to give to the jury instruction number 7 prayed for by plaintiff. Const., sec. 21, art. 2; *Evans v. Haefner*, 29 Mo. 150; *Blake v. Rich*, 34 N. H. 564. (4) The damages are excessive.

*Harber & Knight* for respondent.

(1) Appellant's objection to respondent's second instruction is accurately stated by appellant itself.

He says, "The jury was expressly told thereby to allow double damages." This instruction is somewhat unhappily worded. It is perhaps inaccurate, yet, it is not ambiguous. It is the law. *Haniford v. Kansas City*, 103 Mo. 183; *Mayor of Liberty v. Burns*, 114 Mo. 435. (2) The appellant insists that, by giving the defendant's three instructions on the measure of damages, the trial court declared as a matter of law that all of the defendant's land should be considered by the jury as one tract in assessing the damages. Appellant's insistence is, that these three instructions directed the jury to consider four hundred and eighty-seven acres of land instead of four hundred and forty-seven acres. These three instructions show for themselves that appellant's insistence is not correct. (3) Appellant's seventh instruction, as asked, contained a direct contradiction. If the pond extended "onto the right of way" it undoubtedly would be "affected or disturbed." A pond on appellant's land is not worth as much to respondent as a pond on respondent's own land. If respondent goes upon appellant's land, using it as his own, then respondent becomes a trespasser. (4) The witness stated the value of the pond simply as a reason why he thought the farm was damaged and as a reason tending to show his opinion about the extent of the damage to be correct. *Railroad v. Porter*, 112 Mo. 369.

BURGESS, J.—This is a proceeding commenced by plaintiff corporation to condemn a right of way over a tract of land owned by defendant, Abner B. George.

When the petition for condemnation was filed on July 29, 1895, in the circuit court of Mercer county, Missouri, commissioners were appointed to assess the damages, who viewed the premises, assessed the damages at $2,500, made their report, and filed the same

with the clerk of the circuit court of said county. Thereafter upon motion of plaintiff the report was set aside and inquiry of damages ordered before a jury. At the September term, 1895, of said court the case was tried by a jury who returned a verdict in favor of defendant, assessing his damages at $3,750. After unsuccessful motions for a new trial and in arrest plaintiff appealed.

The evidence showed that defendant owned a tract of land containing about four hundred and forty-seven acres in one body, through which plaintiff sought to condemn a strip one hundred feet wide for right of way, upon which to move its roadbed and track from where they were then located. The weight of the evidence showed that this land was worth $45 or $50 per acre. The strip taken runs diagonally across part of the land, and between the present and the proposed right of way, there are about seventeen and nine tenths acres of defendant's land, and there are ten and forty-one hundredths acres in the proposed right of way. Between the proposed right of way and the public road there are nine and forty-nine hundredths acres, and there are four and forty-seven hundredths acres lying east of the highway running through the land. Then south of the public highway and east of the proposed railroad there are forty-seven and forty-four hundredths acres in the northeast quarter. Where the land taken joins the present road there is a fill of three or four hundred feet in length, and fifteen feet high; the proposed roadbed runs mostly to the surface of the ground for two or three hundred feet, and then there is another fill about the same as the other for about three or four hundred feet; then a light cut, and then a fill of from fifteen to eighteen feet, then another cut of twenty-nine and six hundredths feet at the center, and thirty-three feet at the upper edge of the slope. That cut extends

about one thousand four hundred feet, and then there is another fill of twenty-one to twenty-three feet which extends on defendant's land about seven hundred feet, including the bridge. There was a valuable pond on the land, which the evidence tended to show would be substantially destroyed by the construction of the road.

Defendant also owned forty acres of land which lies a quarter of a mile from the four hundred and forty-seven acre tract which plaintiff contends was considered by the jury in estimating the damages, but this position is not sustained by the record.

Plaintiff prayed the court to instruct the jury as follows:

"1. The court instructs the jury that it is the duty of the railway company to erect and maintain all necessary farm crossings for the use of the proprietors or owners of the lands adjoining said railroad. You are therefore instructed to entirely exclude in your estimate of the damages all necessary expenses to erect and maintain all such crossings.

"2. The court instructs the jury that you will not allow any damages that may result from the construction and operation of the railroad in question over the public highway, or highways, near, or in the vicinity of defendant's lands.

"3. The court instructs the jury that you will not allow any sum as damages to the lands lying south and east of the public highway extending through section 3, in an easterly and westerly direction, by reason of the location and construction of the proposed railway over the lands north of said public highway.

"4. The court instructs the jury that the only damages that you can allow to the lands lying east and south of the public highway, referred to by the witnesses, extending in an easterly and westerly direction through section 3, are such damages, if any, as will be

caused by the location and construction of the railway over the lands south and east of said public highway.

"5. The court instructs the jury that you are not authorized to allow any damages because of the liability, if any, to persons or any stock being injured or killed by reason of the construction and operation of said railroad.

"6. Under the law of this State it is the duty of the plaintiff to build and maintain good and substantial fences on each side of its right of way. You are therefore to exclude entirely from your estimate of the damages all expenses necessary for the construction and maintenance of such fences.

"7. The court instructs the jury that if you find from the evidence that the maintenance of the pond referred to by the witnesses, at its present location will not be affected or disturbed by the proper construction or maintenance of the railway, then you should not allow any sum as damages to said pond.

"8. The court instructs the jury that under the law of this State the plaintiff, by the condemnation proceedings, did not, has not, and will not acquire the absolute ownership of the lands condemned through the defendant's lands for right of way, and only has, and will, by such proceedings, acquire the right to use such lands as and for the purposes, needs and necessities of a railway, so long as it continues to use the same for such purposes. The legal title in fee simple of such lands remains in the defendant, subject only to the right of user on the part of the plaintiff.

"9. The court instructs the jury that in estimating the amount of damages to the lands north and west of the public highway, which extends through section 3, as shown by the map introduced in evidence, in an easterly and westerly direction, you will only consider

the location and construction of said railway through land referred to, in this instruction.

"10. The court instructs the jury that in estimating the amount of damages to the land lying south and east of the public highway in section 3, extending in an easterly and westerly direction, as shown by the map introduced in evidence, you will not consider, or take into consideration in any way, the location or construction of said railway over the lands lying north or west of said public highway."

Of which instructions the court gave to the jury instructions, 1, 2, 5 and 6, and refused to give to the jury said instructions 3, 4, 7, 8, 9 and 10; to which action and ruling of the court in refusing to give said last mentioned instructions plaintiff then and there excepted at the time. Thereupon the court modified and changed said instructions 7 and 8, by adding the words in italics. and then gave them to the jury as modified, as follows:

"7. The court instructs the jury that if you find from the evidence that the maintenance of the pond, referred to. by the witnesses, at its present location will not be affected or disturbed by the proper construction or maintenance of the railway, then you should not allow any sum as damages to said pond, *and this is true, even though said pond may extend onto the right of way condemned by the railway company.*

"8. The court instructs the jury that under the law of this State the plaintiff, by the condemnation proceedings, did not, has not, and will not acquire the absolute ownership of the lands condemned through the defendant's lands for right of way, and only has, and will, by such proceedings, acquire the right to use such lands as and for the purposes, needs and necessities of a railway, so long as it continues to use the same for such purposes. The legal title in fee simple

of such lands remains in the defendant, subject only to the right of user on the part of the plaintiff, *and the defendant will at all times have the right to use any part of such right of way in any way which (will) not interfere with the use thereof by the plaintiff for its purposes, and which will not be inconsistent with the plaintiff's right of use.*"

To which action of the court in so changing and modifying said instructions 7 and 8, and each of them, and in giving them to the jury as modified and changed, plaintiff then and there excepted at the time.

On behalf of defendant the court instructed the jury as follows:

"1. The jury in determining the decrease, if any, in the market value of defendant's farm caused by the construction and operation of the plaintiff's proposed road, will consider the manner in which said farm is to be divided by the construction of said road, the disfigurement, if any, to the farm as a whole, and generally all such matters, owing to the peculiar location of the railroad through defendant's farm, as may, in the judgment of the jury and from the evidence in the case, affect the convenient use and future enjoyment of the farm, considered as a whole, in so far as they affect the market value thereof; but, in the application of this rule the jury will not take into consideration such inconveniences to the defendant as are the consequences of the lawful and proper use of the railroad, in so far as the same are common to the other landowners in the neighborhood, portions of whose land are not taken.

"2. The jury are instructed that, in estimating the damage to be allowed to defendant, they will allow him the value of the land actually taken for the right of way, as the same has been proven, and also such further sum, if any, as the jury may find from the

evidence to be the damage to the whole tract or farm. of defendant of which said right of way forms a part, caused by the appropriation of said right of way for said railroad, so far as the same affects the market value of said farm as a whole.

"3.    The jury are instructed, that in estimating the damage to be awarded the defendant, A. B. George, caused by the taking of his land for the right of way for the railroad of plaintiff, they should take into consideration, so far as the same may affect the market value of the farm of defendant, of which the right of way forms a part, the cuts and fills, to be made by the railroad in passing through defendant's farm and the inconvenience (if any is proven) in the proper use of said farm caused by the construction and maintenance of the railroad on said right of way; and if the jury should find from the evidence that the construction and maintenance of said railroad on said right of way will render access to and from the portions of said farm severed by said railroad, then the inconvenience, if any, arising therefrom, should be taken into consideration by the jury in estimating the damages to be allowed."

To the action of the court in giving each of said instructions plaintiff then and there excepted at the time.

Defendant's second instruction is criticised by plaintiff upon the ground as contended, that it allows double damages, that is, that by it the jury were told to allow the defendant "the value of the land actually taken for right of way" and the "further sum, if any, as the jury may find from the evidence to be the damages to the whole tract or farm, of which the right of way forms a part."

The rule in this State in such cases is, that the person whose land is taken for railroad purposes by the

right of eminent domain is entitled by way of damages to the value of the land actually taken for the right of way, and the damages occasioned thereby to the balance of the tract. In *Doyle v. Railroad*, 113 Mo. 288, the rule is stated by SHERWOOD, P. J., to be as follows: "The measure of damages was correctly declared by the court in the second instruction given on behalf of plaintiffs. It told the jury to take into consideration the actual value of the strip of land taken and appropriated for the right of way, and also the diminution in value caused thereby, if any, to the residue of plaintiff's land from which the right of way was taken." See also *Railroad v. McGrew*, 104 Mo. 282; *Railroad v. Porter*, 112 Mo. 361.

While this instruction is subject to verbal criticism it is not, we think, erroneous. It does not as we understand it authorize the jury to allow double damages. Defendant was entitled to the value of the land actually taken for right of way, and also the diminution in value caused thereby, if any, to the residue of the *farm* from which the right of way was taken, and this is all the instruction permits. It is not it seems to us susceptible to any other construction. In *Railroad v. Waldo*, 70 Mo. 631, a similar instruction was approved by this court. It reads as follows: "In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the railroad company for a right of way, and the damage to the whole tract by reason of the road running through it," etc. The court in passing upon this instruction said: "The first instruction for the defendant is an exact copy of one passed upon and approved by this court in *Railroad v. Ridge*, 57 Mo. 601." In the case last cited the court observed: "This instruction was in substantial conformity with the principles declared in former decisions by this court and was prop-

erly given." Citing *Railroad v. Chrystal*, 25 Mo. 544; and *Lee v. Railroad*, 53 Mo. 178. The instruction is in substantial accord with the rulings of this court in the adjudications cited, and no error was committed in giving it.

Plaintiff contends that by each of the three instructions on the measure of damages, given on behalf of defendant, the jury was directed to determine the decrease, if any, in value of all the land of the defendant when the evidence showed that forty of the four hundred and eighty-seven acres owned by him were situated a quarter of a mile distant from the main farm. In other words, that the court, by these instructions declared, as a matter of law, that all of the defendant's land constituted, and should be considered by the jury, as one tract in assessing the damages. We can not accede to this proposition, as it is manifest from these instructions that the damages, claimed by defendant and assessed by the jury, were for the land which was actually taken for the right of way, and the damages by reason thereof to the farm. To these two things the damages which defendant was entitled to have allowed was restricted by the instructions, and by no fair construction can it be said that the forty acre tract was embraced within them.

It is insisted that the court erred in modifying instruction number 1 asked by plaintiff, but this contention is not borne out by the record, in which it nowhere appears that this instruction was in any way modified, but on the contrary it shows that it was given as asked. But the objection is clearly aimed at the seventh instruction asked by plaintiff which was refused as asked, and amended by the court, and then given after adding the following: "And this is true, even though said pond may extend onto the right of way condemned by the railway company." While it is con-

ceded by plaintiff that the proposed right of way would encroach upon a pond of water on defendant's land it is said that the evidence showed that the pond would not be interfered with in the least, notwithstanding a portion of it is on the proposed right of way. We are unable to see the force of this contention. When a railroad company condemns land for its right of way, its right to the possession of the entire part condemned is exclusive, as much so as of its roadbed and track, and it is only by consent of the company that the owner of the fee in the land can use the surface thus condemned for any purpose. It does not seem to us, however, that the words added to this instruction in anyway changed its meaning, or that by reason thereof it became erroneous. If the right of way should be fenced as required by law, defendant would have no access whatever to that part of the pond inside the fence on the right of way, but plaintiff would have the exclusive use of it.

A further contention is that the court committed error in admitting over the objections of plaintiff illegal and incompetent evidence on behalf of defendant, and especially with respect to the value of the pond, and what defendant would, or would not, take for it, and in refusing to strike out such testimony. While these objections were mostly well taken, they were of such a technical character that the rights of plaintiff could not, we think, have been prejudiced thereby and we will not reverse the judgment upon that ground alone.

A final contention is that the damages are grossly excessive. The estimation of the damages was the province of the jury, and their verdict being supported by substantial evidence, and having met with the approval of the court, we are not disposed to interfere. We therefore affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.