STATE ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent,

v.

Jack HORINE and Wanda Horine, et al., Appellants.

No. 71339.

Supreme Court of Missouri, En Banc.

Sept. 8, 1989.

Werner A. Moentmann, Richmond, for appellants.

Judy Curran, Rich Tiemeyer, Earl H. Schrader, Jr., Mallory Burnett, Missouri Highway & Transp. Com'n., Kansas City, for respondent.

ROBERTSON, Judge.

The issue in this case is whether a landowner who is a party in a condemnation action may recover consequential damages to his land even though those damages are the product of the taking of land owned by other condemnees in the same condemnation action. Appellants assign error to the trial court instructing the jury not to consider evidence of diminished market value to the appellants' property that may result from an increased likelihood of flooding following the construction of the new Route 210. The Court of Appeals, Western District, reversed and remanded. A dissenting judge certified the case to this Court on the basis of a perceived conflict between the majority's opinion and previous decisions of this Court. This certification forms the basis of our jurisdiction. Mo. Const. art. V, § 10. Although we find no conflict with prior appellate decisions of this state, we retain jurisdiction because of the general interest and importance of the question raised. *Pace v. City of Hannibal,* 680 S.W.2d 944 (Mo. banc 1984). We now reverse and remand.

I.

Appellants, Jack and Wanda Horine, own and occupy a tract of farm land in Ray County, Missouri. Respondent, the Missouri Highway and Transportation Commission (Commission), is constructing a new Route 210 near the Horine land. In conjunction with the highway project, the Commission condemned a small portion of the southeast corner of the Horine land for the purpose of relocating a county road that will eventually connect with the new highway. The new Route 210 does not pass through or abut the Horine property.

A creek flows through the Horine land, passing under a county road bridge. Prior to construction of the new highway, when the creek overflowed, the water would drain over the old highway. The Commission designed the new highway at a higher elevation than the old Route 210. The Horines contend that the elevation of the new, higher highway will act as a dam and prevent the escape of water when the creek overflows. Instead of simply draining over the old highway, the Horines contend that the water will back up onto their land, flooding their residence and outbuildings.

Jack Horine testified that the creek has overflowed between eight and ten times in the past thirty years and that the construction of new Highway 210 would definitely stop the flow of water escaping their property. Mr. Horine also stated that their property has decreased in value due to the danger of flood.

According to the testimony of registered professional engineer Harold B. Townsend, an expert in hydraulics and hydrology, the creek channel at the county road bridge would accommodate a storm that would occur every five years (taken over a great span of time) and any greater storm would overflow its banks. Townsend testified that a five-year frequency storm would possibly flood the Horine residence and outbuildings, and that the area is subject to flooding considering 50- and 100-year frequency storms. Townsend stated, "There is no question in my mind from a hydraulic standpoint, hydrologic standpoint, that sometime in the future that house will be flooded." He further testified that the new highway would cause the water level in the flooded area to rise faster—in a matter of minutes, not hours.

The testimony of real estate broker and appraiser Melvin Thacker was that the threat of flooding contributed to an estimated $42,500 diminution in the value of the tract as a result of the taking. He testified:

> So we are talking about something like 17 feet of fill across in front that's going to create a pond. We are going to back up water, and we have no relief or no spillway, so to speak ... Mr. Horine is going to be in an area where he can't buy flood insurance ... I don't think anyone would buy a piece of property in a flood area unless they bought it cheap enough to take the gamble.

The right of way appraiser for the Highway Commission testified that the danger of flooding was not an item of damage in the appraisal because "the question of whether the excavation would have any effect upon drainage or flooding in the area was brought up, and the answer was it would not cure existing problems, but it would not create any problems either, so it would be the same before as after."

At the outset of trial, the Commission moved to exclude evidence of any flooding potentially attributable to future construction on Route 210 because such damages could not be the consequence of the taking of the easement to relocate the county road. The Commission argued that appellants had no standing in this case to claim damages for the potential threat of flooding because the Horines' land was not taken for construction of the highway, that their property did not abut the highway at its present or future location and that any increase in the likelihood of flooding was not proximately caused by the taking of the Horines' land.

The trial court denied the Commission's motion in limine and admitted the evidence concerning potential flooding and reduction in the market value of appellant's farm over respondent's objection. After the evidence had concluded, respondent renewed its objections, made throughout the trial, to the evidence of reduced value of appellant's farm attributable to potential flooding. The court agreed and gave the following instruction which withdrew that evidence from the jury's consideration:

> The evidence of potential flooding caused by the construction upon land not owned by defendants of Route 210, and of loss of view across land not owned by defendants is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

## II.

"[P]rivate property shall not be taken or damaged for public use without just compensation." Mo. Const. art. I, § 26. Courts generally distinguished between damages resulting from physical entries onto private land and damages resulting from indirect encroachment of private property rights. See generally 4A Nichols' on Eminent Domain §§ 14.01, et seq. (3rd rev. ed. 1985). Three clear rules have developed consistent with the distinction between kinds of damages recognized by the courts.

First, physical appropriation of property, in whole or in part, entitles the landowner to compensation for the property taken; these damages are direct damages and are paid in advance of the taking. *Lemon v. Garden of Eden Drainage Dist. of Chariton County*, 275 S.W. 44, 46, 310 Mo. 171 (1925); *State ex rel. Becker v. Wellston Sewer Dist. of St. Louis County*, 58 S.W.2d 988, 992, 332 Mo. 547 (banc 1933). Second, where a landowner whose property is not being condemned anticipates damage to his property as the result of a condemnation, he is not a necessary party to the condemnation proceedings and may not be compensated until damage actually occurs. *State ex rel. State Highway Commission v. Lynch*, 297 S.W.2d 400, 402–03 (Mo.1956); *Lemon*, 275 S.W. at 46; *Hill–Behan Lumber Co. v. Skrainka Const. Co.*, 106 S.W.2d 483, 485–86, 341 Mo. 156 (1937); *Guaranty Savings & Loan Ass'n. v. City of Springfield*, 139 S.W.2d 955, 957, 346 Mo. 79 (banc 1940). Third, once a landowner is entitled to direct damages as the result of the loss of his property, he is entitled to "the market value of the land actually taken, and the consequential damages,[1] if any, to the remainder of the land caused by the taking." *State ex rel. State Highway Commission v. Long*, 422 S.W.2d 276, 278 (Mo. banc 1967), quoting *City of St. Louis v. Vasquez*, 341 S.W.2d 839, 846 (Mo.1960).

The issue presented in this case is one of first impression. This Court has not previously considered the question whether a landowner who is a party to a condemnation proceeding and who is entitled to direct damages for the taking of his land may also recover consequential damages to his land that result not from the taking of his land, but from the taking of other land within the same condemnation action. The certification of this case to this Court by the dissenting judge at the court of appeals is founded on a perceived conflict between the majority's opinion and *Hill–Behan*, 106 S.W.2d at 485; *Chicago R.I. & P. Ry. v. George*, 47 S.W. 11, 14, 145 Mo. 38 (1898); *City of St. Louis v. Kisling*, 318 S.W.2d 221, 224 (Mo.1958); *State ex rel. State Highway Commission v. Allison*, 296 S.W.2d 104, 111 (Mo. banc 1956); and *State ex rel. State Highway Commission v. Lynch*, 297 S.W.2d 400, 403 (Mo.1956). Because this is a case of first impression, we do not believe a conflict exists in the cases.[2]

---

1. In condemnation cases, the courts have used the phrase "consequential damages" inconsistently. *Hill–Behan Lumber Co. v. Skrainka Construction Co.*, 106 S.W.2d 483, 485 (Mo.1956), tells us: "all damages to which the constitutional provision refers are consequential except (1) those resulting from the actual taking of land; (2) and those occasioned to the remainder of a tract by the taking of a part thereof."

 As *State ex rel. State Highway Commission v. Long*, 422 S.W.2d 276, 278 (Mo. banc 1967), states, however, a landowner is entitled to damages for the value of the land taken "and the consequential damages, if any, to the remainder of a tract by the taking of a part thereof."

 We believe the better practice is to consider damages for the value of the land taken as direct damages; any other damages that flow to the landowner as a consequence of the taking are consequential damages. As used in this opinion, the phrase "consequential damages" will reflect this understanding.

2. In *Chicago, Rock Island & Pacific Railway Company v. George*, 47 S.W. 11, 145 Mo. 38 (1898), this Court upheld the award of damages by a jury in a case where the railroad condemned a right-of-way over a landowner's property. The Court permitted an instruction to the jury stating that it could assess damages for the land actually taken for the right-of-way and the damages occasioned thereby to the balance of the tract. "Defendant was entitled to the value of the land actually taken for right of way, and also the diminution in value caused thereby, if any, to the residue of the land from which the right of way was taken...." *Id.* 47 S.W. at 14.

 In *Hill–Behan Lumber Company v. Skrainka Construction Co.*, 106 S.W.2d 483, 341 Mo. 156 (1937), this Court held that the owner of a lumber and hardware business was not entitled to damages as a result of the building of a viaduct in front of his facility. None of the lumber yard's property was taken in the condemnation. The changing of the grade of the street restricted the owner's ability to load and unload trucks, and he charged that he was entitled to compensatory damages for the taking of this right. The Court said that "if there is an actual appropriation of a corporeal hereditament the damage is direct, but if the appropriation is of an incorporeal hereditament the damage is consequential." *Id.* 106 S.W.2d at 485. The Court found that there was no actual appropriation of the physical property and the damages suffered in this case were "purely consequential, as no part of the abutting property was taken or physically touched." *Id.*

Nevertheless, the case is here and presents a question of general interest and importance; we will retain jurisdiction. *Pace v. City of Hannibal*, 680 S.W.2d 944 (Mo. banc 1984).

The Commission argued in support of its motion in limine that the taking of the .10 acre strip for relocation of the county road was not the direct and proximate cause of the Horines' damages. As a consequence, the Commission urged, the jury should not be allowed to consider the consequential damages might be caused by potential flooding to the property. Before the court of appeals, however, the Commission (as respondent) offered a different rationale for pretermitting consideration of the Horine's claimed consequential damages: that the consequential damages claimed are too remote and speculative to be considered. We shall consider both arguments.

### A.

As previously indicated, the Commission argued at trial that the consequential damages sought by the Horines were not caused by the taking of their land and were thus not properly considered in determining the Horines' damages. The Commission argues that the Horines must wait until flooding damage occurs and proceed with an action in inverse condemnation.

All agree that the .10 acre taken from the Horines' for the county road will not be the direct cause of the flooding. Yet the land taken from the Horines' is a part of the entire project undertaken by the Commission. The relocation of the county road, which created the need for the Horines' land, and the elevation of new Route 210 constitute a single public improvement project. The Horines' land is apparently a necessary component of the entire project. The Commission filed a single suit to condemn all of the land required to effectuate its plan.

 The rules we earlier cite are clear on two points germane to this case. First, if none of the Horines' land were condemned, the Horines would have to await actual flooding before seeking damages. *Lynch*, 297 S.W.2d at 402–03. Second, if the Horines had owned all of the land taken for the entire Route 210 project, in the presence of appropriate proof that the increased likelihood of flooding decreased the market value of their remaining land, the Horines would be entitled to damages for the diminished market value of their remaining land. *Long*, 422 S.W.2d at 278; *Missouri Public Service Co. v. Juergens*, 760 S.W.2d 105, 106–07 (Mo. banc 1988).

 Considering these rules, we believe the better policy is to permit persons whose land is taken as part of a single

In *State ex rel. State Highway Commission v. Lynch*, 297 S.W.2d 400 (Mo.1956), this Court again held that a landowner could not collect for consequential damages when no land was being taken. The controversy in this case was occasioned by the Highway Commission's motion to dismiss its previous petition to condemn a small part of the property owner's land. The Court held that the Commission could dismiss its petition. The apparent reason the Commission wanted to dismiss, and that the landowner resisted the dismissal, was the assumption that he could, if he were a party to the condemnation suit, prove the consequential damage to his farm from flooding.

*State ex rel. State Highway Commission v. Allison*, 296 S.W.2d 104 (Mo. banc 1956), was a related case where the Court held that the circuit court judge could not stay all the condemnation proceedings currently filed in his court pending the outcome of *Lynch*. The Court said that the "Lynches could have no cause of action for consequential damages prior to the infliction of the damages, *or prior to the acquisition of*

*property for right of way and the construction of the proposed improvement.*" (Emphasis added) *Id.* at 111.

The last of the cases cited in the dissent, *City of St. Louis v. Kisling*, 318 S.W.2d 221 (Mo. 1958), addressed a technical issue of passage of title and consecutive condemnation proceedings. The Court held that the trial court should not have considered evidence of consequential damages in a proceeding to condemn land for an airport because the land in question was the subject of another condemnation proceeding for a street and arguably title had already passed to the city.

These cases stand for the proposition that recovery of consequential damages in a condemnation proceeding is limited to those situations in which the condemnor has physically appropriated a portion of the owner's property. The fact situation here is different. Thus, these cases are neither in conflict with the result reached by the majority at the court of appeals, nor are they inconsistent with the result we reach here.

public improvement project and who are part of a condemnation action to recover their consequential damages even though it is not the taking of their land that is the direct cause of their damage. This conclusion is consistent with the spirit of *Owen v. City of Springfield,* 741 S.W.2d 16 (Mo. banc 1987), which prohibits a condemnee from filing a subsequent inverse condemnation action for damages which could be reasonably anticipated in the original condemnation action. Although *Owen* did not involve damages caused by land owned by another condemnee, we believe the policy expressed there enhances judicial economy and ought to apply to the factual circumstances of this case.

### B.

We turn now to the Commission's subsequent argument that the evidence of potential flooding of the Horine's property should not be admitted because it is contingent, remote, and speculative and neither direct nor certain at the time of the taking. The Commission contends that appellant's evidence as to the potential flooding is not "actual, susceptible of proof, and capable of being approximately measured." *Tate v. State Highway Commission,* 49 S.W.2d 282, 283, 226 Mo.App. 1216 (1932).

When part of a tract of land is condemned, the appropriate measure of damage is the difference between the fair market value of the entire property before the taking and the fair market value after the taking. *Kamo Elec. Co-op. v. Baker,* 287 S.W.2d 858, 861, 365 Mo. 814 (1956). Any factor that has a present, quantifiable effect on the market value of the property is proper as an element of damages. *Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 267 (Mo.App.1988); *Phillips Pipe Line Co. v. Ashley,* 605 S.W.2d 514, 517–18 (Mo. App.1980). Moreover, the depreciation in market value due to a risk of harm is recoverable in a condemnation proceeding. *Missouri Public Service Company v. Juergens,* 760 S.W.2d 105, 106–07 (Mo. banc 1988). Therefore, the question is not whether the Horines property will flood, when it will flood, or even how much it will

flood, but whether the risk of the flooding is sufficiently strong as to impact negatively the amount a purchaser would pay for the Horine land.

The prohibition against remote, speculative and contingent damages prevents landowners from recovering for events that do not now, or may not ever, diminish the market value of the land. *Cape Girardeau & C.R. Co. v. Bleechle,* 137 S.W. 974, 977, 234 Mo. 471 (1911); *City of St. Louis v. Paramount Shoe Mfg. Co.,* 168 S.W.2d 149, 153–54, 237 Mo.App. 200 (1943). In *Juergens,* this Court held that the depreciation in market value due to a risk of harm is recoverable in a condemnation proceeding; it is the risk of harm which diminishes the market value of the land, not the absolute likelihood of the feared event occurring. The Court held that all evidence tending to show depreciation in the value of the land is admissible, and the appropriate weight to be given that evidence is a judgment left to the jury with proper instructions. *Juergens,* 760 S.W.2d at 106; *Texas–Empire Pipe Line Company v. Stewart,* 55 S.W.2d 283, 285, 331 Mo. 525 (1932). So long as the risk of flood is supported by competent testimony, evidence concerning the diminution of the market value due to that risk should not be removed from the jury's consideration.

Because this case will be remanded, there is no need to recite the Horines' evidence in greater detail. It is sufficient for our purposes here to recognize that the evidence at trial relating to the decrease in market value caused by the increased potential for flooding was essentially uncontradicted. The trial court pretermitted the jury's consideration of the Horines' consequential damages by its withdrawal instruction.

In this case, the Commission's argument that the consequential damages claimed by the Horines are not capable of even approximate measurement is a bit disingenuous. In the first instance, the argument focuses on the likelihood of a flood, not on whether that likelihood affects the market value of the land. Second, the Commission regularly deals with valuations of land and well

understands the uncertain nature of establishing values for real estate. This Court has considered the question and has said:

> In the very nature of things there can be no absolute standard by which the value of land or interests therein can be measured; and of course, when it cannot be tested by the fact of a recent sale the nearest approach to it which can be obtained is a knowledge of the opinion and judgment of intelligent, practical men who are· acquainted with the property. Evidence of such opinion and judgment must of necessity often be all that can be ｒｅｓorted to, and it is always competent and admissible, leaving its weight in each particular case to be determined by the jury in connection with the circumstances under which it is offered.

*Texas–Empire*, 55 S.W.2d at 285. As we have said, we leave it to the trier of fact to assign appropriate weight to the evidence before it.

The Horines' evidence was that the value of their land will decrease as a result of the construction of the new Route 210. Thus, were they to sell the remaining land, their evidence shows that the sale price would be less than it would without the construction of the new highway. If the jury believes their evidence, the Horines are entitled to compensation for that loss in the value of their remaining land. We do not believe the evidence of diminished market value in this case is too remote or speculative to allow the jury to consider it. Accordingly, the trial court erred in failing to allow the jury to consider the evidence.

### III.

For the reasons stated, the trial court erred in withdrawing from the jury's consideration the evidence of a decrease in the market value of the condemnees' land brought about by the increased likelihood of flooding wrought by the construction of the new Route 210. The judgment is reversed. Because this case speaks in an area not previously addressed by this Court, we remand this case so that both the Commission and the Horines may present evidence regarding the market value of the remaining land and for such other proceedings as may be consistent with this opinion.

BLACKMAR, C.J., WELLIVER, RENDLEN, HIGGINS and BILLINGS, JJ., and DOWD, Special Judge, concur.

COVINGTON, J., not sitting.